243 So.2d 558 (1971)
Willie Earl MILLER
v.
STATE of Mississippi.
No. 46220.
Supreme Court of Mississippi.
February 1, 1971.
Louie Bishop, Waynesboro, for appellant.
A.F. Summer, Atty. Gen. by Guy N. Rogers, Asst. Atty. Gen., and William Jeff East, Sp. Asst. Atty. Gen., Jackson, for appellee.
PATTERSON, Justice:
This is an appeal from the Circuit Court of Wayne County wherein a jury found the appellant guilty of grand larceny for which he was sentenced to serve three years in the state penitentiary.
One of the appellant's assignments of error is that the lower court erred in admitting into evidence a confession made by the appellant since it was procured as the result of a promise or inducement by the sheriff of the county. The sheriff's testimony upon the hearing to determine the validity of the confession was in part as follows:
We picked him up on the 12th, and he begin to tell how he believed that it was his calf, that he felt it was his calf, and all that, and Mr. Harper left. It was getting late. Mr. Harper left and told him he would be back the next morning. Later on I went in there and talked to the boy and told him his mother and them wanted to get him out of jail. I had walked back, carried him and put him in the jail. They wanted to carry him home. I told him that I would let *559 them carry him to the house, and he be back up here the next morning, and he might better tell the truth about the thing, he would be better off. So he left and went home and came back up here about nine o'clock the next morning, him and his mother.
On cross-examination he further testified:
Q. The next morning, on March 13th, you had not talked to this boy prior to the time that Mr. Harper talked to him?
A. Yes. Yes, he had talked to me.
Q. And what had you all talked about?
A. Well, he decided, said  I had told him the night before it would be best for him to tell the truth about the thing. The next morning he came up and said he wanted to tell me how it happened, and he told me.
The trial court found the appellant's statement to have been freely and voluntarily made. It did not, however, rule upon the statement of the sheriff with regard to whether it was an inducement or offer of leniency to the appellant if he would confess. In Robinson v. State, 247 Miss. 609, 613, 157 So.2d 49, 51 (1963), we stated: "* * * a mere exhortation or adjuration to speak the truth will not exclude a confession, but where such adjuration is accompanied by an expression that it would be better for the accused to tell the truth, some courts have refused to admit such confession. * * *", citing Mathews v. State, 102 Miss. 549, 59 So. 842 (1912) and Frazier v. State, 107 So.2d 16 (Fla. 1958). We held in Robinson that the statement or confession made subsequent to an exhortation to "square with the State, or the City, whoever the crime was against" and with the "`man upstairs' and that if he didn't, he wasn't trying to help himself" was the equivalent of an inducement, rendering the statemen inadmissible in evidence as being involuntarily made.
In Mitchell v. State, 24 So. 312 (Miss. 1898), we held that a confession given by the defendant was not voluntarily made subsequent to the defendant's being advised by the sheriff that it would be better for him to tell all about it.
Recently, in Agee v. State, 185 So.2d 671, 674 (Miss. 1966), we held:
A confession made after the accused has been offered some hope of reward if he will confess or tell the truth cannot be said to be voluntary. This Court has long adhered to the rule that when the offer of reward or hope of leniency is made by a private individual the same rule applies. In Clash v. State, 146 Miss. 811, 112 So. 370 (1927) a confession was held inadmissible when it was signed by the accused after a private individual had told him that, "* * * `If he would tell us about the money, and return it, we would let him out of jail on bond.'" In Johnson v. State, 89 Miss. 773, 42 So. 606 (1906) private citizens told the accused that, "* * * it would be better for him to confess, as it would go lighter with him if he told the truth." The confession that followed these statements by private citizens was held inadmissible.
Although the statement made by the sheriff that the appellant would be better off by telling the truth was probably not intended as an inducement, yet, when it is considered under the circumstances in which it was made, we conclude it very probable that the statement caused the appellant to confess. Some of these circumstances were that the appellant was a twenty-year-old Negro youth of previous good reputation, having never been incarcerated before, who was desirous of being released from jail. These factors, when considered with the additional fact that the sheriff is the highest officer of the county, a representative of the State, speaking in his official capacity to a youth accused of a crime, cast such doubt upon the confession as to render it inadmissible in evidence. We are of the opinion the confession was not voluntarily made and that its admission constitutes reversible error.
*560 We have examined the other assignments of error and find them to be without merit. The indictment which charged the larceny of a "neat calf" is in compliance with Mississippi Code 1942 Annotated section 2242 (Supp. 1968) which states in part as follows:
* * * that if any person shall feloniously take, steal and carry away any of the kind of neat or horned cattle, he shall be guilty of larceny * * *.
On retrial, however, we visualize a more complex problem that will likely arise as to the identity of the calf charged to have been stolen, but which did not arise in this trial due to the confession. The gist of the evidence relating to the identification of the calf other than the confession is that Mr. Sumrall, had an unweaned calf missing from his pasture. This witness subsequently observed a calf in the local stock-yard which he determined to be his from its markings and size. He purchased the calf and returned it to his pasture, whereupon the following transpired, according to the witness:
* * * I carried it immediately to my pasture where it had left from, and drove up to the gate, and the cow was on the inside of the pasture, and my truck stopped in the road, and the calf went to the side of the truck, and the cow come to the gate and they knew one another immediately, after some 15 or 16 days, they knew one another. I opened the gate, opened my truck gate, and the calf come off the truck by itself and went immediately and nursed the cow. She turned about half way around and smelled it, and licked it, and let the calf nurse. She was very happy. And then I placed them in the barn and fed them, and went home.
Without more, this description and identification of the calf would probably be legally sufficient. However, the defendant testified that he had recently purchased four calves, one of which disappeared from his pasture. It was described by the defendant as:
A. It looked just like my calf. I thought it was mine. You couldn't tell, they looked so much alike. * * *
* * * * * *
Q. Was it just like your calf?
A. Yes, sir.
Mr. George Doby testified for the defendant. His testimony was that he had sold four small calves to the defendant. He accompanied the sheriff to Mr. Sumrall's pasture for the purpose of identifying the calf. His testimony was:
A. * * * I told him he looked just like it.
* * * * * *
Q. Was it just like the calf?
A. Just like the one I sold the boy.
Q. Could you tell any difference at all?
A. Well, it had done pretty good since I had sold them. The calf looked just like the one I sold, but he went to sucking his mamma and I said, "That ain't him."
Q. In other words, when you first saw him, he was away from his mamma and you thought 
A. Yes, I thought so. Said, "that's him." Told the Sheriff, "That's him."
There is no evidence to indicate that the appellant observed the calf nursing the Sumrall cow. Mr. Sumrall and Mr. Doby obviously leaned quite heavily, if not altogether, on recognition of the calf by the cow, permitting it to nurse, for positive identification. Whether this was an act of charity on the part of a forlorn and benevolent cow for an orphaned and hungry calf or whether it was mutual filial recognition equal in status to criminal evidence as being to a moral certainty and beyond a reasonable doubt, gives us concern, and though *561 we cannot suggest an answer, we do express the hope that the calf will be properly identified on retrial.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, SMITH and ROBERTSON, JJ., concur.