542 So.2d 237 (1989)
Robert Brent LAYNE
v.
STATE of Mississippi.
No. 58292.
Supreme Court of Mississippi.
March 29, 1989.
*238 Thomas D. Berry, Jr., Gulfport, for appellant.
Mike Moore, Atty. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appellant, together with an accomplice, developed a rather sordid plan of robbery and when the drunken victim did not cooperate, stabbed him repeatedly with his knife. Convicted of capital murder, appellant presents questions regarding the legal sufficiency of the evidence against him, the admissibility of his confession, the trial judge's interrogation of a witness and the correctness of a jury instruction regarding the offense charged in the indictment. We have carefully reviewed each point, find them without legal merit, and affirm.

II.
Robert Brent Layne was born May 31, 1966. In February of 1986 he was living in the Maison d'Orleans Apartments in Biloxi, Mississippi, and working at Ward's Restaurant. In the early evening hours of Monday, February 3, 1986, Layne went to visit his friend, Alan Dickinson, who lived with his girlfriend, Suzanne Sekul. Layne and Dickinson played cards and drank beer from 7:00 p.m. until 10:00 p.m. They then left the apartment, driving in Dickinson's car to a cocktail lounge known as Le Bistro. The clientele of Le Bistro is composed primarily of homosexual men and the establishment has a reputation of being a "gay bar". Layne and Dickinson planned to represent themselves as male prostitutes, allow themselves to be "picked up" by a homosexual man, and then, when the opportunity presented itself, rob that person.
Soon after their arrival at Le Bistro, Layne and Dickinson spotted George Edwards and approached him as he left the bar. Edwards invited them back to his apartment. Layne rode with Edwards while Dickinson followed in his car. Edwards, 40 years of age, worked as the maitre d' at the White Pillars Restaurant in Biloxi. Though a rather large man, Edwards appeared to be a "easy mark" to Layne and Dickinson as he was heavily intoxicated.
After arriving at Edwards' apartment, the two sat down, conversed with their intended victim, listened to music and drank more beer. After approximately thirty minutes Layne maneuvered to a position behind Edwards and struck him over the head with a plaster figurine. Stunned, Edwards staggered a few feet and lay down upon the living room couch. He appeared to fall asleep.
Layne stood watch over the apparently unconscious Edwards while Dickinson rifled the bedroom looking for valuables. Dickinson returned to the living room, his pockets bulging with watches and other trinkets, and the two started to leave. Edwards, however, awoke and attempted to prevent Layne's escape. A scuffle ensued and Layne stabbed Edwards approximately a dozen times. Layne fled, leaving George Edwards to bleed to death on the floor of his living room.
After leaving Edwards' apartment, Layne discovered that Dickinson had left without him, so he returned on foot to Dickinson's apartment. After he arrived, the two inventoried the watches and jewelry taken from Edwards' bedroom. In sum, Dickinson had taken $19.00 in cash, two or three watches, a half-dozen men's and women's rings, some cigarette lighters and a small automatic pistol.
On April 9, 1986, Robert Brent Layne was indicted by a Harrison County Grand Jury for the capital murder of George Edwards. The case was called for trial on June 23, 1986, and in due course the jury found Layne guilty as charged. Sentence was set by the jury at life imprisonment.
Layne now appeals to this Court.

*239 III.
Layne argues that the Circuit Court erred when it refused to grant his motion for a directed verdict made at the close of the prosecution's evidence, and the subsequent renewals of that motion made in the form of his request for a peremptory instruction and post-trial motion for judgment of acquittal notwithstanding the verdict. He cites the familiar Weathersby rule. See Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933). Weathersby, of course, is nothing more than a particularized version of our general standards according to which courts must decide whether in a criminal prosecution the accused is entitled to a judgment of acquittal as a matter of law. Harveston v. State, 493 So.2d 365, 370-71 (Miss. 1986).
The evidence in this case creates little doubt but that the jury could reasonably have found that Layne murdered Edwards with a knife while engaged in the commission of the crime of robbery. See Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1988); Smith v. State, 530 So.2d 155, 157 (Miss. 1988); Jackson v. State, 527 So.2d 654, 658 (Miss. 1988); Burge v. State, 472 So.2d 392, 395 (Miss. 1985); Fairley v. State, 467 So.2d 894, 902 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 798 (Miss. 1984); Berry v. State, 455 So.2d 774, 776 (Miss. 1984).
The assignment of error is denied.

IV.
Layne argues that the Circuit Court erred when it denied his motion to suppress the written statement he gave to Biloxi Police officers.
Layne was apprehended at approximately 3:20 a.m. on the morning of February 5, 1986. He was read his Miranda rights[1] at that time. Some two hours later, and after he had been informed of his rights at least two more times, Layne gave a recorded statement to Inspector Rodney McGilvary and Det. Dan Russell of the Biloxi Police Department. At trial a transcription of this taped statement was admitted into evidence over Layne's objection.
At the pre-trial suppression hearing, Patrolman Gerald Forbes, who transported Layne to the police station, stated that in his brief conversations with the defendant he advised Layne that the best policy would be to tell the truth. Forbes stated that Layne admitted to him that, although he had been present when Edwards was killed, the stabbing was actually perpetrated by someone named "Scottie".
Det. Russell testified that he administered the standard Miranda warnings to Layne at the time that he was arrested. In addition, Russell was present when Layne executed his Waiver of Rights form and when Layne made his recorded statement to the authorities. Russell testified that the only promise that was given to Layne while he was in police custody was that if he were to be cooperative with the investigation, the district attorney would be informed of this fact.
Layne testified at the suppression hearing. He claimed that he was not informed that the recorded statement could be used against him and he thought that his conversations with the police were "off the record".
The determination whether a confession was freely and voluntarily given is the function of the Circuit Court, sitting as fact-finder. The court must determine whether the accused has been adequately warned, and whether, under the totality of the circumstances, he has voluntarily and intelligently waived his privilege against self-incrimination. Jones v. State, 461 So.2d 686, 696-97 (Miss. 1984); Edwards v. Arizona, 451 U.S. 477, 486, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 387 (1981). Where the defendant claims that the confession was a result of police coercion or promise of leniency, and therefore involuntary, the prosecution has the burden of proving all facts relevant to admissibility beyond a reasonable doubt. Pinkney v. State, 538 So.2d 329, 342 (Miss. 1988); White v. State, *240 495 So.2d 1346, 1347 (Miss. 1986); Gavin v. State, 473 So.2d 952, 954 (Miss. 1985).
At the conclusion of the suppression hearing the trial court made extensive findings of fact as to the voluntariness of Layne's statement, specifically that Layne had been advised of his rights, see Rule 1.03, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979), and that he had intelligently and voluntarily waived those rights and confessed. To the point at issue, the Court stated:
The only  if there was a problem, which you've kept bringing up with the officers that was over the fact that the officers told him that if he talked to them and told them the truth, they would tell the district attorney that, and that he had cooperated, and they did. That's quite obvious. That, again, to me is not any undue influence or irregular or elicit promise or inducement in order to get the statement.... I find the statement taken by tape-recording to be free and voluntarily done by this defendant after he had been appropriately advised of his rights, and done without any force, threats or promises having been made. Given those findings, again, for the purposes of the record being made beyond a reasonable doubt, I find that the statements are admissible.
Despite Layne's claim that the officers interrogating him promised leniency in return for his cooperation, the Court found that the alleged promises of leniency were no more than exhortations to speak the truth, similar to those condoned in Moore v. State, 493 So.2d 1301, 1303 (Miss. 1986). Moore held the statement made by an interrogating officer, "I just told him that he should go ahead and tell the truth", was not an implied promise of leniency. To make clear its ruling, the Moore court explained that a statement to the effect that "it would be easier on him if he told the truth" would have been "over the line". See e.g. Miller v. State, 243 So.2d 558, 559 (Miss. 1971) ("tell the truth about the thing, he would be better off" held to be a promise of leniency); Johnson v. State, 89 Miss. 773, 777, 42 So. 606, 606 (1907) ("it would go lighter with him if he told the truth"; same); and Mitchell v. State, 24 So. 312, 312 (1898) ("it would make it better for him if he would tell all about it"; same).
Layne presents a troublesome question. It is hard to imagine any reason why the officers would tell Layne they would advise the district attorney of his cooperation other than to induce Layne to waive his rights and confess. Such tactics in the course of custodial interrogation comes perilously close to infecting further prosecution of the accused with reversible error.
Layne relies upon Miller, where the court reversed a grand larceny conviction based upon a confession where the defendant's statement was taken after the police had told him that he would be "better off" if he would "tell the truth about the thing." The defendant in Miller was also led to believe that he might be released from jail if he gave the police a statement. 243 So.2d at 559. Miller is close and arguably indistinguishable. Today we proceed on a Circuit Court finding that the officers did not make any implied promises. "The officer said ... that he told him if you're going to talk, tell the truth. There's nothing wrong with that legally." Outcome determinative is the fact that Layne offered no evidence  through his own testimony or otherwise  that the officers' "promise" was the reason he confessed.
We are aware that other courts which have examined the type of promise given by the officers to Layne  "I promise to relate the fact of your cooperation to the District Attorney"  have held that such a statement when accompanied by no other coercive psychological tactics does not constitute an implied promise of leniency or advantage. Rowland v. State, 460 So.2d 282, 283 (Ala. Crim. App. 1984); Plant v. State, 724 P.2d 536, 541 (Alaska App. 1986); Beasley v. United States, 512 A.2d 1007, 1016 (D.C.App. 1986); Baynard v. State, 518 A.2d 682, 690 n. 14 (Del. 1986); State v. Whitsel, 339 N.W.2d 149, 153-54 (Iowa 1983); State v. Vernon, 385 So.2d 200, 204 (La. 1980); State v. Muenchau, 209 Neb. 552, 308 N.W.2d 824, 826 (1981); State v. Tindle, 104 N.M. 195, 718 P.2d 705, 710 (App. 1986); People v. Martinez, 133 A.D. *241 2d 572, 520 N.Y.S.2d 1, 4 (1987); State v. Richardson, 316 N.C. 594, 342 S.E.2d 823, 830 (1986); State v. Adkison, 338 S.E.2d 185, 187 (W. Va. 1985); United States v. Pelton, 835 F.2d 1067, 1073 (4th Cir.1987); and United States v. Frazier, 434 F.2d 994, 995-96 (5th Cir.1970).
In today's case, the statements made by the police to the effect that the prosecutor would be informed of Layne's cooperation were not accompanied by any further promise of benefit or advantage. Further, there were no other indications that the interrogating officers employed any additional persuasive interviewing techniques. Layne had been informed of his rights at least three times before the taped statement was made. Moreover, the "waiver of rights" form and the taped statement each contain statements to the effect that "no threats or promises have been made to me, and no pressure or coercion of any kind has been used against me". Because Layne offered no evidence that the officers' "promise to tell the district attorney" was a proximate cause of his confession, we have no alternative but to affirm.
The assignment of error is denied.

V.
Layne argues that the Circuit Court erred when it examined a prosecution witness and made comments  allegedly unnecessary  upon the evidence.
During the direct examination of Suzanne Sekul, Allen Dickinson's girlfriend, the prosecution attempted to qualify for admission into evidence a bag containing the alleged fruits of the robbery. The defense objected on the ground that Sekul could not positively identify all of the items in the bag as those which Dickinson and Layne had brought with them in the early morning hours of February 4, 1986. After initially identifying some of the items, Sekul began to vacillate.
The Circuit Court then entered the fray and interrogated the witness, first, regarding the identification of the bag and then the items allegedly in it, segregating those items which the witness could positively identify from those which she could not.[2]
After separating the items in the bag into these two groups, the Court then made its ruling on the admissibility of the items.
*242 THE COURT:
... I've gone through each item with her. She tells me absolutely two items she identifies. She absolutely identified two items. The other items, she can't. Because of that, given your voir dire, I sustain the objection as to the items that she cannot identify. As to the two she can't, I overrule your objection.
After a brief recess and at the request of defense counsel, the Court reminded the jury that they would ultimately decide whether the items admitted into evidence were relevant to the case against Layne, stating "You decide whether or not any or all of these items in evidence have anything, if anything at all, to do with this case."
Rule 614(b), Miss.R.Ev., provides "the court may interrogate witnesses, whether called by itself or by a party." See Lanier v. State, 533 So.2d 473, 486 (Miss. 1988). Not inconsistently, the Uniform Criminal Rules of Circuit Court Practice state:
When necessary, the judge may interrogate a witness or may interrogate a witness to clarify testimony, but when doing so, must use the utmost impartiality and must not indicate an opinion on the value of the testimony.
Rule 5.08, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979); see also United States v. Jackson, 700 F.2d 181, 187-89 (5th Cir.1983). We have made clear that we will not hesitate to reverse where the trial judge displays partiality, becomes an advocate, or, in any significant way, conveys to the jury the impression that he has sided with the prosecution. West v. State, 519 So.2d 418, 422-24 (Miss. 1988); see also Shelton v. Puckett, 483 So.2d 354, 357 (Miss. 1986).
In today's case, the Circuit Court was presented with an objection by defense counsel to the introduction of a single exhibit containing numerous items, some admissible, others arguably not. The Court, in an effort to expedite the trial and in order to rule intelligently on the objection, interrogated the witness in an effort to ascertain which of the items were indeed admissible. It did so in an impartial, albeit terse, manner. The Court did not abuse its discretion in the premises.
The assignment of error is denied.

VI.
Layne finally argues that the Circuit Court erred when, over his objection, it submitted to the jury Instruction C-8-G. That instruction defined for the jury the offenses of capital murder,[3] murder and manslaughter. Layne complains that this instruction strips him of the defense which he relied on at trial  self-defense.
At its core, this assignment presents the question, to what degree are felons to be held strictly accountable for a death resulting in the course of their felonious acts. We begin with the statutory definition of capital felony-murder:
The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
* * * * * *
(e) When done with or without any design to effect death, any person engaged in the commission of the crime of *243 ... robbery, ... or in any attempt to commit such felonies; ...
Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1988). Unlike other sections of the capital murder statute, Subsection 2(e) does not require the prosecution to prove the elements of murder, only that a killing took place while the accused was "engaged in the commission" of the enumerated felonies.
Layne's reliance upon Lancaster v. State, 472 So.2d 363 (Miss. 1985), for the proposition that self-defense is an appropriate defense in a capital murder case is misplaced. Lancaster dealt with the capital murder of a sheriff's deputy under Section 97-3-19(2)(a) which defines as capital murder a "murder which is perpetrated by killing a peace officer or fireman while such officer or fireman is acting in his official capacity ..." In such a case, the prosecution is required to prove the elements of murder in addition to those elements which aggravate such murder into a capital offense, and if there is an evidentiary basis therefor, justifiable homicide or self-defense may be a viable defense. See also Mease v. State, 539 So.2d 1324, 1328-29 (Miss. 1989); Lanier v. State, 450 So.2d 69, 81 (Miss. 1984).
On the record before us, there appears no reasonable basis upon which the jury may rationally have concluded that Layne had not participated actively in the robbery of George Edwards and killed Edwards in his effort to escape therefrom. On this point the case is quite distinguishable from Harveston v. State, 493 So.2d 365, 372 (Miss. 1986), where there was before the jury an evidentiary basis upon which the jury may have found that no robbery occurred and that the killing was either accidental or justifiable.
Davis v. State, 597 S.W.2d 358 (Tex. Crim. App. 1980) offers a rationale fitting today's case:
The purpose of the felony-murder rule is to deter even accidental killings in the commission of designated felonies by holding the felon strictly liable for murder... . When a burglar kills in the commission of a burglary, he cannot claim self-defense, for this would be fundamentally inconsistent with the very purpose of the felony-murder rule.
597 S.W.2d at 360 (citations omitted).
This rule is derived from the common law precept that an aggressor in a violent confrontation is precluded from claiming self-defense as a mitigating circumstance.
Authority clearly supports the contention in this respect and indicates that a person who provokes a difficulty thereby forfeits his right to self-defense. This doctrine has been extended to preclude a person who commits a felony from claiming self-defense not only to the intended victim of the felony, but also as to any person intervening in an attempt either to prevent the crime or to apprehend the criminal.
* * * * * *
[A] person who commits an armed robbery forfeits his right to claim as a defense the necessity to protect himself against the use of excessive force by either the intended victim of the robbery or by any other person intervening to prevent the crime or to apprehend the criminal, absent a factual showing that at the time the violence occurred, the dangerous situation created by the armed robbery no longer existed.
Gray v. State, 463 P.2d 897, 909 (Alaska 1970). To the same effect is Street v. Warden, 423 F. Supp. 611 (D.Md. 1976), where the court stated:
When a defendant is charged under this [felony-murder] statute, the defense of self-defense is unavailable to him as a matter of law because he is an aggressor engaged in the perpetration of a felony... . This Maryland construction of the felony-murder statute comports with the general rule on the subject of the non-availability of self-defense as a defense to felony-murder.
423 F. Supp. at 613-14.
Many other jurisdictions have reached this same conclusion. Rainer v. State, 342 So.2d 1348, 1357 (Ala. Crim. App. 1977); People v. Loustaunau, 181 Cal. App.3d 163, 170, 226 Cal. Rptr. 216, 219 (1986); State v. *244 Marks, 226 Kan. 704, 602 P.2d 1344, 1351 (1979); People v. Guraj, 105 Misc.2d 176, 431 N.Y.S.2d 925, 927 (N.Y.Sup. 1980); Smith v. State, 209 Tenn. 499, 503, 354 S.W.2d 450, 452 (1961). Again, the rule assumes the absence of a reasonable basis upon which the jury may have disbelieved the prosecution's evidence of the underlying felony.
Of the above-cited cases, most rely upon the common law rule that an aggressor in an act of violence is foreclosed from pleading self-defense, although some courts base the result upon the policy consideration that felons should be held strictly accountable for any death resulting from their criminal activity. Mississippi adheres to the common law rule that an aggressor is precluded from pleading self-defense. Patrick v. State, 285 So.2d 165, 168 (Miss. 1973); Woodward v. State, 180 Miss. 571, 581, 177 So. 531, 534 (1937); Cotton v. State, 135 Miss. 792, 797, 100 So. 383, 383 (1924). See also Pinkney v. State, 538 So.2d 329 (Miss. 1988).
To be sure, Layne's theory of defense was that following the robbery and Dickinson's departure, the drunken Edwards made homosexual advances and that Layne killed Edwards in self-defense. On the record before us, there is no basis for thinking that the robbery had become a past fact such that Layne was not still engaged in its commission, Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1988), i.e., Layne had not yet made good his escape.
In this context, any claim of self-defense is irrelevant to a charge of capital felony-murder.[4] The Circuit Court did not err in omitting the defense of self-defense while instructing the jury as to the elements of capital murder.
CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694, 726 (1966); Rule 1.03, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979).
[2] The specific colloquy at issue reads as follows:

THE COURT:
Give me the bag.
MR. BERRY:
I would object to Your Honor leading her through it.
THE COURT:
Object for the record. Both of you can. I'm tired of you both playing games.
MR. BERRY:
I'm trying to protect the interest of my client, if the Court please, and I move the Court 
THE COURT:
I'm going to sustain your objection. Can you identify that bag?
THE WITNESS:
Yes.
THE COURT:
Absolute?
THE WITNESS:
Absolute.
THE COURT:
No doubt in your mind about it?
THE WITNESS:
No doubt in my mind.
THE COURT:
Can you identify that gun?
THE WITNESS:
Yes.
THE COURT:
Absolute?
THE WITNESS:
Absolute.
THE COURT:
No doubt in your mind?
THE WITNESS:
No doubt.
THE COURT:
Can you identify that lighter? ...
THE WITNESS:
Yes.
THE COURT:
Absolute?
THE WITNESS:
Yes.
THE COURT:
There's no doubt in your mind this lighter was one of the pieces of property that was brought home?
THE WITNESS:
There were some lighters, but I can't say 
THE COURT:
I didn't ask that.
THE WITNESS:
I don't know.
THE COURT:
I said, is this one of the lighters?
THE WITNESS:
I don't know.
[3] Regarding the offense of capital murder, the jury was instructed as follows:

The defendant, Robert Brent Layne, has been charged with the crime of capital murder for having killed a human being without authority of law while he was engaged in the commission of a robbery.
If you believe from the evidence in this case beyond a reasonable doubt that:
(1) the incident in this case occurred in the Second Judicial District of Harrison County, Mississippi, and,
(2) the defendant, Robert Brent Layne, did unlawfully strike the said George Edwards with a knife, causing George Edwards to sustain multiple stab wounds, and as a direct result of said acts, the said George Edwards was killed, and
(3) the act which resulted in the killing was committed while the defendant, acting in concert with Allen Dickinson, was engaged in the commission of the crime of robbery, then if you so believe from the evidence in this case that the State has proven all of the three (3) elements beyond a reasonable doubt, you shall find the defendant guilty of capital murder and conclude your deliberations by returning said verdict into court.
[4] Nevertheless, we note that the Court submitted to the jury Instruction No. C-20-G which reads as follows:

The Court instructs the jury that to make a killing justifiable on the grounds of self-defense or in defense of an attempted Sodomy the danger to the defendant must be either actual, present and urgent, or the defendant must have some reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm or commit an attempted Sodomy on his person and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished, It is for the jury to determine the reasonableness of the ground upon which the defendant acts.