# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KA-01298-SCT


*ROBERT CHARLES JONES*

*a/k/a 'KUNG FU'*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 07/22/1998 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MINOR F. BUCHANAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/03/2000 |
| MOTION FOR REHEARING FILED: | 8/15/2000; denied 2/15/2001 |
| MANDATE ISSUED: | 2/22/2001 |


**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Convicted of capital murder by a jury in the Circuit Court of the First Judicial District of Hinds County and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections, Robert Charles Jones appeals and asserts nine grounds to reverse. Finding no reversible error, we affirm the jury verdict and the court's judgment and sentence.

## FACTS AND PROCEEDINGS BELOW

¶2. In the early morning hours of November 6, 1994, Robert Charles Jones, Willie Lee Martin, and Frances Diane Coleman, Martin's girlfriend, were riding around Jackson, Mississippi, smoking marijuana and drinking. Steve Steverson ("Steve"), who operated a pool hall on Moonbeam Street, owed Martin $100. While riding around, Martin decided to "straighten out [his] business" and asked Jones if he was willing to help him retrieve the $100 from Steve. Jones agreed to help in exchange for marijuana, and they drove to the pool hall. According to Coleman's testimony, Martin called Steve outside. Once outside, Jones put a gun to Steve's back and forced him into the car.[1] Martin drove; Coleman was in the front passenger

seat; and Jones and Steve were in the back seat. As they drove off, Jones pistol-whipped Steve in the head and told him to get down.

¶3. Steve did not have the $100, but told them his mother would have it. They went to his mother's house, and Coleman knocked on the door. Millie R. Steverson, Steve's mother, answered the door. Coleman informed Steve's mother that her son would be killed if she did not give them the $100 Steve owed Martin. Steve's mother went out to the car and begged for her son's life. Steve tried to speak to her but the "man in the back seat" hit Steve with a pistol and told him not to get up.[2] Steve's mother was later able to identify Martin, but she was unable to identify the man in the back seat with her son because "he never looked straight at [her]."

¶4. Steve's sister, Millie O. Steverson, was walking home and saw her mother speaking to some people in a car. She recognized her brother's voice coming from the floorboard of the backseat, but she never actually saw him. Martin told her that Steve would be killed if they did not come up with $100. Steve's sister told Martin that she would make a call and get the money. Initially, Martin agreed and ordered Coleman to go inside with Steve's sister to make sure she did not call the police. Martin, however, changed his mind, ordered Coleman to get back in the car, and drove off. Millie O. Steverson was able to later identify both Jones and Martin.

¶5. Martin, Coleman, Jones and Steve then drove to Betty Spann's house on Carol Drive in Jackson. Coleman testified she went in the house while Martin, Jones and Steve stayed outside. She remained inside for five or ten minutes. Coleman then went back outside and saw Martin and Jones "beating, kicking, and hitting" Steve. Coleman testified that Jones kept hitting Steve in the head with a brick while Martin continued kicking and beating him. Coleman further testified that Steve was beaten so severely that he was left unconscious and that she never saw Steve move again. Martin and Jones then put Steve in the trunk of the car.

¶6. After Martin, Jones, and Coleman left Spann's house, they drove to a bridge on Watkins Drive. According to Coleman's testimony, Martin and Jones went to the trunk, opened it, and got Steve out. Martin and Jones then took off Steve's clothes and pushed him over the bridge into Hanging Moss Creek.[3] Coleman further testified that Martin said he was "going to make an example out of Steve" before firing a shot. During this time, Coleman was watching for other cars. Martin, Jones, and Coleman then drove to a second bridge where Coleman wiped the gun clean and threw it in a creek. Meanwhile, with $100 in hand, Steve's mother and sister waited until 5:00 a.m. for Steve to return.

¶7. On February 15, 1995, Coleman turned herself in to the Jackson Police Department and gave a statement describing the events surrounding Steve's death. Coleman's confession was completely voluntary. She was neither sought by police nor had she been given any deal by the State in exchange for the information. Coleman was originally charged with capital murder. She subsequently accepted a plea bargain with the State, wherein she plead guilty to kidnapping in exchange for her testimony against Martin and Jones. Coleman received a 30-year sentence, with 20 years suspended.

¶8. On March 17, 1995, Jackson Police Officer Johnny Taylor received a call from an individual who said he found what he believed to be a body near the bridge on Watkins Drive. Officer Taylor arrived and found something "like the foot portion on the embankment and the upper portion of the leg . . . across the width of the ditch, and . . . then there was what appeared to be a hand on the embankment underneath the leg . . . ." The parts recovered included the right shoulder blade and arm, a portion of the torso, ribs, the hips and

both legs. Two days later, a partial skull was found about a quarter to a half a mile upstream from where the body was discovered. The body was in an advanced stage of decomposition and was examined by Dr. Steven Hayne, a physician who practices in the fields of anatomic pathology, clinical pathology, and forensic pathology.

¶9. Although the skeleton was essentially incomplete, Dr. Hayne determined the remains were from an "African-American male, . . . who had an approximate age of fifty years, an approximate height of six foot three inches . . ., and was a muscular, strong built individual." Dr. Hayne found no clothing on the body, but was also able to identify a tatoo, with the initials "S.S." on the right arm of the body. Steve's mother later testified that Steve had a heart-shaped tatoo with the initials "S.S." on his right arm. Although no DNA testing was done to determine if the skull and trunk were from the same body, Dr. Hayne testified that "to a reasonable degree of medical certainty . . . the skull was from the trunk." Dr. Hayne based his determination on physical proximity, the absence of a second trunk, the absence of a second skull, and the age, race and sex being essentially identical between the skull and trunk. Dr. Hayne also determined that the cause of death was blunt force trauma to the head, specifically noting the wound pattern "was essentially three-sided forming an outward picture similar to that of a triangle." Dr. Hayne testified that such a wound pattern would be similar to that which would occur if an individual was struck with a brick.

¶10. Robert Charles Jones was later convicted in the Circuit Court of the First Judicial District of Hinds County for the crime of capital murder. He was thereafter sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Jones timely perfected this appeal.

## STATEMENT OF LAW

### I. WHETHER THE JURY VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE

¶11. Jones asserts that the jury verdict was against the overwhelming weight of the evidence. A motion for new trial asks that the jury's verdict be vacated on grounds related to the weight, and not sufficiency, of evidence presented at trial. *May v. State*, 460 So. 2d 778, 781 (Miss. 1984). "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of evidence that to allow it to stand, would sanction an unconscionable injustice." *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). Furthermore, "a reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict." *Id.* at 300. "It is enough to say that the conflicting evidence presented a factual dispute for jury resolution." *Id.*

¶12. Upon review, we are to consider all evidence in the light most favorable to the prosecution, accepting all credible evidence consistent with the verdict as true. *Ashford v. State*, 583 So. 2d 1279, 1281 (Miss. 1991) (collecting cases). Likewise, we must accept all reasonable inferences drawn from the evidence that are consistent with the verdict. *Id.* at 1279. "Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt the defendant was guilty." *Id.*

¶13. In the present case, this Court finds the jury's verdict was not contrary to the overwhelming weight of the evidence and that the State provided ample evidence to support the conviction. The jury heard the

testimony of Coleman, who voluntarily entered the police station over a month before the body was discovered and confessed to the crime. Coleman identified Jones as the person with Martin and her the night of murder.

¶14. The jury heard the testimony of Dr. Hayne, who testified the cause of death was blunt force trauma to the head. Coleman's confession included a description of Jones's beating Steve in the head with a brick. Additionally, the State provided Jones's own confession, wherein he admitted beating Steve and throwing him in a creek.[4] The State also provided the testimony of Steve's sister, who identified Jones as being the man in the backseat of the car with Steve.

¶15. "Matters regarding the weight and credibility of evidence must be resolved by the jury." *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985). In the present case, the jury's verdict was not so contrary to the overwhelming weight of the evidence as to constitute an unconscionable injustice. It was quite possible and reasonable for the jury, upon the evidence given them at trial, to conclude Jones was guilty of capital murder. Although the evidence was somewhat in conflict, it was the jury's duty to resolve the conflict, and this Court, absent an abuse of discretion, will not disturb the trial court's denial of a new trial. Therefore, this Court finds the circuit court did not err by denying Jones a new trial.

## II. WHETHER JONES WAS DENIED HIS CONSTITUTIONAL AND STATUTORY RIGHT TO A SPEEDY TRIAL

¶16. For the first time upon appeal, Jones asserts that he was denied both his constitutional and statutory right to a speedy trial. In his brief, Jones provides the following chronology:

| Date | Event | Days of Delay |
|------|-------|---------------|
| 11/20/95 | Arraignment | |
| 01/22/96 - 03/19/96 | Defense Continuance | 56 |
| 05/28/96 - 07/22/96 | Defense Continuance | 56 |
| 07/22/96 - 09/30/96 | Defense Continuance | 70 |
| 05/19/97 - 08/11/97 | Defense Continuance | 84 |
| 07/07/98 | Trial | 975 |
| Total days attributable to defense continuances | | 266 |
| Total days of non-defense delay | | 709 |
| Total days of delay in excess of statutory 270 days | | 339 |

However, the only information regarding continuances contained within the record is provided on the docket sheet as follows:

05/09/96 continued

06/26/96 continued

09/09/96 continued

11/18/96 continued

04/01/97 continued

05/21/97 continued

09/12/97 continued

The record does not reveal the length of each continuance nor who requested the continuance. Additionally, the dates provided on the docket sheet do not match the dates asserted by Jones in his brief. Likewise, there are no motions requesting continuances nor any orders of continuance contained within the record. Simply put, there is not enough information in the record before this Court to adequately address this issue.

¶17. This Court has repeatedly held that "[we] will not consider matters which are outside the record and must confine [ourselves] to what actually does appear in the record." *Medina v. State*, 688 So. 2d 727, 732 (Miss. 1996) (citing *Robinson v. State*, 662 So. 2d 1100, 1104 (Miss. 1995). "We can not decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." *Medina v. State*, 688 So. 2d at 732. Furthermore, Jones has failed to show any prejudice which might have resulted from the delay. *See Walton v. State*, 678 So. 2d 645, 650 (Miss. 1996). Without such information, we are unable to find a constitutional or statutory violation of the right to a speedy trial. Therefore, we decline to address this issue.

### III. WHETHER JONES WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE INTRODUCTION OF PREJUDICIAL HEARSAY TESTIMONY

¶18. "A criminal defendant is not entitled to a perfect trial, only a fair trial." *McGilberry v. State*, 741 So. 2d 894, 924 (Miss. 1999). Jones asserts he was denied his constitutional right to a fair trial because of the "blatantly proscribed hearsay" that was admitted at trial. First, Jones contends the circuit court erred by allowing Millie R. Steverson, Steve's mother, to testify to hearsay. A review of the record, however, indicates that the testimony of Steve's mother was not hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c).

¶19. In the present case, Steve's mother testified that Coleman knocked on her door and told her Steve would be killed if she did not come up with the money Steve owed Martin. Steve's mother further testified that she ran out to the car and begged for her son's life, explaining she saw her son being hit on the head in the back seat. The testimony of Steve's mother was not offered to prove the truth of the matter asserted, but rather was offered to show what was said and the surrounding circumstances. "Generally, words which accompany and give character to a transaction are not considered hearsay." *Gayten v. State*, 595 So. 2d 409, 414 (Miss. 1992). "Just as clearly, the fact that these statements were made indicates the nature of the transaction and, in fact, that there was a transaction." *Id.* Therefore, Jones's argument that the circuit court erred in allowing hearsay testimony by Millie R. Steverson is without merit.

¶20. Likewise, Jones asserts the court erred by admitting the testimony of Steve's sister, Millie O. Steverson. Jones alleges the testimony of Steve's sister that she heard Steve ask his mother to give up the keys to the car is inadmissible hearsay. This Court disagrees. As noted above, the testimony of Steve's sister was not offered for the truth of the matter asserted, but rather was offered for the fact it was said. Accordingly, this issue is without merit.

¶21. Jones next asserts the court erred in allowing the hearsay testimony of co-defendant Diane Coleman.

Jones contends the circuit court erred by allowing Coleman to testify as to what was said in the car on the way to the pool hall. Once again, as noted above, Coleman's testimony that Martin said he was going to "straighten out his business" and asked Jones if he was willing to help is not hearsay. M.R.E. 801(d)(2)(E) provides that a statement is not considered hearsay if it is an admission by a party-opponent, offered against a party, and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. *See* ***Wilkins v. State***, 603 So. 2d 309, 317 (Miss. 1992). Coleman's testimony about the plans made by Jones, Martin and her in the car on the way to kidnap Steve was not hearsay. Consequently, the circuit court did not err in admitting Coleman's testimony, and this issue is also without merit.

¶22. Finally, Jones asserts the circuit court erred in admitting the hearsay testimony of Dr. Steven Hayne, wherein Dr. Hayne was asked about the presence of a Dr. Waldrip, a forensic anthropologist. Dr. Hayne testified that Dr. Waldrip was present at the time of the autopsy, that Dr. Waldrip's comments were "confirmatory" of his findings, and that Dr. Waldrip's comments were "something that is reasonably and customarily relied upon by forensic pathologists . . . in forming opinions."

¶23. M.R.E. 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or interferences upon the subject, the facts or data need not be admissible into evidence.

Consequently, this Court finds the circuit court did not err by allowing Dr. Hayne's testimony. Furthermore, no hearsay error occurred, and Jones was not denied his constitutional right to a fair trial.

### IV. WHETHER THE LOWER COURT ERRED IN NOT GRANTING JONES'S MOTION TO SUPPRESS HIS PURPORTED CONFESSION

¶24. Jones asserts the circuit court erred when it did not suppress an alleged oral confession made by Jones to the police. Jones allegedly confessed to Joe Wade, a law enforcement officer, after Wade told Jones "if he told the truth it could only help himself." "We give great deference to the findings of a circuit judge that a confession was freely and voluntarily made, it being his function at the trial level to make this determination." ***Dunn v. State***, 547 So. 2d 42, 46 (Miss. 1989).

¶25. In ***Layne v. State***, 542 So. 2d 237, 241 (Miss. 1989), the patrolman asked Layne to be cooperative and informed him the district attorney would be told of his willingness to cooperate. This Court found such comments by the police to be "troublesome", and stated, "It is hard to imagine any reason why the officers would tell Layne they would advise the district attorney of his cooperation other than to induce Layne to waive his rights and confess." ***Id.*** at 240. However, at the suppression hearing, Layne offered no evidence that the statement made to him by the patrolman had anything to do with his confession. "Outcome determinative is the fact that Layne offered no evidence - through his own testimony or otherwise - that the officers' "promise" was the reason he confessed." ***Id.*** Consequently, the patrolman's comments were not the proximate cause of his confession, and this Court found the issue to be without merit.

¶26. In the present case, a hearing was held on Jones's motion to suppress the confession, and the circuit judge denied Jones's motion. Jones testified, in relevant part, as follows:

> Q: You said that they threatened you, correct?

A: Correct.

Q: You said they made promises to you, correct?

A: Correct.

Q: Well, what did they get from all that?

A: Nothing.

Q: So you're not here to tell this Court that you gave a statement to the police but you did it involuntarily? You're not telling the Court that, are you?

A: Repeat your question.

**Q: You're not telling Judge Hilburn that you gave a statement only because the police threatened you. You're saying you didn't give a statement, right?**

**A: That's right.**

Q: You're not telling the Court you gave a statement because of promises made to you. You're telling the Court you didn't give them nothing, right?

A: Nothing.

(emphasis added). Not only did Jones fail to present evidence showing Officer Wade's comment was the proximate cause of the confession, Jones indicated that he never gave a confession at all. Accordingly, Jones cannot now argue his confession was involuntary and the result of police coercion, when, in fact, he claims he never confessed in the first place. Therefore, the circuit court did not err by allowing Jones's confession into evidence.

### V. WHETHER THE LOWER COURT ERRED IN NOT ALLOWING DEFENSE COUNSEL TO INQUIRE INTO THE CRIMINAL RECORD AND PAROLE ELIGIBILITY OF CO-DEFENDANT, FRANCIS DIANE COLEMAN

¶27. Jones contends that the circuit court erred in prohibiting him from inquiring into Coleman's prior robbery conviction, as well as her entitlement to parole eligibility. The State requested an order in limine to prevent Jones from eliciting evidence of Coleman's prior criminal offenses. The two prior convictions were for armed robbery and possession of cocaine, and were dated June 12, 1984, and January 14, 1983, respectively. The State argued that the convictions were not probative of the truth or veracity of the witness's testimony. The State also argued that the robbery conviction was more than 10 years old and excludable under M.R.E. 609(b). The circuit judge ruled that the armed robbery conviction could not be admitted because "the prejudicial nature of that evidence would not be exceeded by its probative value." However, the circuit judge ruled evidence of the drug conviction was admissible. Coleman was then placed on the stand and questioned about her prior drug conviction and current plea bargain with the State.

¶28. First, Jones asserts that the circuit court erred in denying him the opportunity to question Coleman about her prior armed robbery conviction because the conviction was more than 10 years old. As noted

above, however, the trial judge did not exclude the robbery conviction because it was more than 10 years old, but rather because he found the "prejudicial nature of that evidence would not be exceeded by its probative value." M.R.E. 609(b) provides that a conviction more than 10 years old may not be used as impeachment evidence unless the judge finds the probative value substantially outweighs its prejudicial effects. In the present case, Jones fails to show how the armed robbery conviction was probative. At trial, Jones's only argument that the armed robbery conviction should be admitted was because it "goes to her credibility." In order for these past convictions to be introduced before a jury, the burden is upon the moving party to establish the prior conviction has probative value. *McInnis v. State*, 527 So. 2d 84, 88 (Miss. 1988). Jones has failed to meet this burden. Accordingly, this Court finds the circuit court properly excluded Coleman's prior armed robbery conviction.

¶29. Second, Jones asserts the circuit court erred by not allowing him to explore Coleman's parole eligibility in relation to her plea bargain with the State. This Court disagrees and finds this issue to also be without merit. In his brief Jones refers to the following objection:

Q: Okay. And since your case is prior to July the 1st, 1995, you fall under the old law which is -

Mr. Delaughter: - Objection, your honor. This has absolutely nothing -

By the Court: Sustained.

Jones now is implying, on appeal, that had Coleman been sentenced under the old law, she would have been eligible for parole sooner than if she had been sentenced under the new truth in sentencing law. Jones asserts, "The fact that Coleman was indicted as a habitual offender, subject to a sentence without benefit of parole, and that she pled guilty to kidnapping . . . makes the issue of her parole eligibility material to her cross examination." However, Jones never raised this issue before the trial court and now raises it for the first time upon appeal. This Court has repeatedly held that a defendant is confined on appeal to the grounds of objection he raised at trial. *Roundtree v. State*, 568 So. 2d 1173, 1177 (Miss. 1990).

¶30. Additionally, it should be noted that Jones was allowed to explore fully the plea bargain made between the State and Coleman. The record indicates that Jones was allowed to cross-examine Coleman and, on more than one occasion, was allowed to point out to the jury that her plea bargain resulted in a kidnapping conviction and a 30-year sentence of which she will only serve 10 years. Accordingly, this Court concludes that Jones has failed to show how the trial court abused its discretion by excluding the prior robbery conviction. Therefore, these assignments of error are without merit.

## VI. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING THE INTRODUCTION OF GRUESOME AND GRAPHIC PHOTOGRAPHS

¶31. Jones asserts the circuit court erred in admitting into evidence exhibits 3 and 4, contending these photographs were more prejudicial than probative. In response to Jones's assertion, the State argues the photographs were relevant for a number of reasons, including: (1) depicting the condition of the body at the time it was discovered; (2) showing the extent of the body's deterioration, which explains why other body parts were missing or found at different points in the creek; and (3) to demonstrate the pathologist's inability to find gunshot holes in the body due to its badly decomposed condition. This Court agrees and finds the circuit court did not err in admitting these photographs into evidence.

¶32. It is well settled in Mississippi that the admissibility of photographs rests within the sound discretion of

the trial judge. *Westbrook v. State*, 658 So. 2d 847, 849 (Miss. 1995). Photographs that are gruesome or inflammatory or lack an evidentiary purpose are inadmissible as evidence. *McNeal v. State*, 551 So. 2d 151, 159 (Miss. 1989). However, "if photographs are relevant, the mere fact that they are unpleasant or gruesome is no bar to their admission." *Sudduth v. State*, 562 So. 2d 67, 69 (Miss. 1990). Furthermore, photographs have evidentiary value when they: (1) aid in describing the circumstances around the killing and the corpus delicti; (2) where they describe the location of the body and the cause of death; or (3) where they supplement or clarify witness testimony." *McGilberry*, 741 So. 2d at 906.

¶33. In the present case, Exhibit 4 is neither gruesome nor unpleasant. The photograph provides an aerial view of the intersection of Watkins Drive and Hanging Moss Creek, the area where Steve's body was discovered. Exhibit 4 simply gives an overall view of the area and creek where the body was discovered. It further supplements the testimony of the officers who were first called to Watkins Drive to investigate the discovery of a possible body. This photograph is neither prejudicial nor gruesome, and the circuit court did not abuse its discretion in admitting it into evidence.

¶34. Exhibit 3 depicts a decomposed leg, hand, and part of an arm. While there is no question the photograph is unpleasant, its prejudicial effect is outweighed by its probative value. The picture depicts the location and condition of the body as it was first discovered. The picture further clarifies the testimony of Officer Johnny Taylor's description of what he found when he first arrived at the scene. The trial judge examined the photographs at trial and ruled exhibits 3 and 4 admissible. Absent an abuse of discretion, the trial judge's decision will not be overturned. *Westbrook*, 658 So. 2d at 849. Therefore, this Court finds the circuit court did not abuse its discretion by admitting the photographs into evidence.

### VII. WHETHER THE CIRCUIT COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION S-1

¶35. Jones asserts that the circuit court committed reversible error when it granted jury instruction S-1. However, Jones failed to object to the jury instruction offered by the State at trial. This Court has held on numerous occasions that an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal. *Walker v. State*, 729 So. 2d 197, 202 (Miss. 1998); *see also Green v. State*, 631 So. 2d 167, 173 (Miss. 1994) ("Green failed to object to the manslaughter instruction given at trial; therefore, it is not necessary for us to review this assignment.").

¶36. In the present case, not only did Jones fail to object to the jury instruction, he agreed with the revised instruction. During the discussion of instructions, the trial court expressed some concern regarding the wording in the second paragraph of jury instruction S-1. The court subsequently struck through some of the wording. Jones's only response was, "I would not object to that, Your Honor." The present case is similar to *Butler v. State*, 544 So. 2d 816, 818 (Miss. 1989), where Butler, in addition to not objecting to the jury instruction at trial, acquiesced in the giving of the instruction. In *Butler*, this Court held the defendant's failure to object at the trial level, coupled with this assent to the giving of the instruction, barred him from raising such an error upon appeal. Accordingly, Jones waived any objection by not objecting to the jury instruction at trial, and this Court declines to address this issue upon appeal.

### VIII. WHETHER THE CIRCUIT COURT ERRED BY REFUSING TO GRANT DEFENSE INSTRUCTIONS D-1, D-2, D-4, D-5, D-7, D-8, D-10, AND D-12

¶37. Jones asserts the trial court erred when it refused to give eight of his requested jury instructions. In

*Higgins v. State*, 725 So. 2d 220, 223 (Miss. 1998), this Court summarized Mississippi's law on jury instructions, in relevant part, as follows:

> Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence.

This Court finds the circuit court did not err in refusing the eight instructions. A review of the record indicates that all instructions were fairly covered in other instructions, as follows:

> Instruction D-1 is a presumption of innocence instruction which is fairly covered by instruction C-2.

> Instruction D-2 is a reasonable doubt instruction, which is fairly covered by instructions C-2, C-3, and D-3.

> Instruction D-4 is an instruction discussing the duty of an individual juror and is fairly covered by instruction C-4.

> Instruction D-5 is an instruction which discusses impeachment and is fairly covered by instruction D-6.

> Instruction D-7 is an accomplice instruction which is fairly covered by instruction C-5.

> Instruction D-8 is an instruction which discusses conflicting evidence and is fairly covered by instruction C-3.

> Instruction D-12, a "corpus delicti" instruction, is fairly covered by instructions C-2, C-3, S-1, and D-3.

Jones also asserts that the trial court erred in refusing to grant instruction D-10, a lesser-included offense instruction which would have allowed the jury to consider a manslaughter verdict. This Court disagrees and finds that Jones has failed to provide sufficient evidence to support a conviction of manslaughter in this case. The jury heard testimony of Coleman and Steve's sister, who both identified Jones as participating in Steve's kidnapping. The jury also heard Coleman's testimony that Jones beat Steve in the head with a brick prior to his helping Martin through the body over a bridge. Jones has failed to show any foundation in the evidence for the manslaughter instruction. Therefore, the trial court did not err by refusing a manslaughter instruction. Accordingly, these assignments of error are found to be without merit.

### IX. WHETHER THE TRIAL COURT COMMITTED ERROR IN OVERRULING THE MOTION FOR NEW TRIAL

¶38. The final error submitted by Jones reads, "In order to avoid duplicity, each and every argument made in assignments of error 1-8 are incorporated into this assignment of error as if copied in full words and figures." Uncertain as to what Jones implies by this statement, this Court has adequately addressed the new trial issue in Issue I and finds any cumulative error assignment to be without merit.

### CONCLUSION

¶39. This Court finds all assignments of error to be without merit. Therefore, the judgment of the Circuit Court of the First Judicial District of Hinds County is affirmed.

¶40. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. In Jones's alleged statement to the police, he stated that Martin was the only individual who exited the car and that Martin was the one who put Steve in the car.

2. Steve's sister, Millie O. Steverson, testified that she saw a pistol and that Steve was "pushed down" by Jones, but she never personally saw "[any] licks passed."

3. Jones's alleged statement to police was different. According to Jones, Martin ordered Steve out of the car and told him to take off his clothes. Martin pushed Steve down the creek and fired a shot. According to Jones, he never saw Steve move again after the shot was fired.

4. Jones denies ever making this confession to the police and never signed the confession.