585 So.2d 660 (1991)
Michael Warren WILLIE
v.
STATE of Mississippi.
No. 89-DP-1285.
Supreme Court of Mississippi.
July 24, 1991.
*664 Travis Buckley, Ellisville, John Paul Moore, Starkville, James W. Craig, Jane Tucker Lambert, Jackson, for appellant.
Mike C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
SULLIVAN, Justice, for the Court:
This cause comes on appeal from the Circuit Court of Oktibbeha County, Mississippi, Harvey S. Buck presiding. On July 31, 1989, Michael Warren Willie was tried for capital murder for committing the murder of Joe Clardy while engaged in the commission of a robbery. In a bifurcated jury trial, the jury first found Willie guilty of capital murder, and then sentenced Willie to death by lethal injection. Willie appeals his conviction and sentence assigning eighteen errors. We affirm the jury's verdict of guilty, but vacate the sentence of death and remand this action for a new trial on sentencing only.

THE FACTS
On the morning of January 20, 1989, a customer at Joe's Package Store in Maben, Oktibbeha County, Mississippi discovered the body of Joe Clardy, the store owner, lying on the floor near an empty cash register. Clardy had been shot three times  once in the head, once in the chest, and once in the stomach.
Upon investigation, the authorities learned that a black man driving an unlicensed light colored hatchback-type car with a maroon or red hood had been seen near Joe's Package Store that morning. Michael Warren Willie, who had been arrested that same morning by the Eupora police for driving an unlicensed vehicle, became a suspect in the shooting and robbery *665 when authorities noticed that the car Willie had been driving was a light blue Chevy with a maroon hood. After a short period of questioning by a Webster County Sheriff and an Oktibbeha County Sheriff, Willie confessed.
Willie's statements showed that prior to this incident, he was charged with grand larceny. Willie was to make an initial appearance at the Webster County Courthouse on this charge on January 20, 1989, and Willie's attorney told him that he would need approximately $1,500.00 or he would go to jail. On the eve before Willie was to make his appearance, he did not have $1,500.00, so he decided to rob some place.
The next morning, Willie drove in his girlfriend's car to Joe's Package Store intending to commit robbery. Willie entered the liquor store armed with a .38-caliber pistol and told Clardy to give him all the money. Clardy put the money and some checks on the counter. Willie, seeing a video camera which could have recorded the robbery, told Clardy to give him the tape from the camera. As Clardy handed Willie the tape, Clardy allegedly reached for Willie's gun. The gun fired hitting Clardy in the chest. Willie panicked and pulled the trigger twice more hitting Clardy once in the abdomen and once in the head. Willie grabbed the money and checks, ran out of the store, and drove north on Highway 15 towards Walthall. While driving, Willie threw the checks out the window. A short time later, Willie stopped to throw his pistol in a creek. He also smashed the tape from the video recorder on the steering wheel and threw the pieces onto a gravel road. Willie received approximately $850.00 from the robbery.
Willie took the money to the Webster County Courthouse to make his appearance on the grand larceny charge. While he was there he saw Sheriff Middleton run out of the courtroom. Willie assumed the sheriff left to investigate the robbery. Willie waited a few minutes and then left to get a sandwich at his girlfriend's house. She was not at home, so Willie left and drove towards Walthall. While driving, Willie was stopped by the Eupora police for driving an unlicensed car. He was arrested and taken to the Webster County Jail. While in custody, Willie heard a description of the car believed to have been involved in the shooting and robbery come over the radio. Willie was questioned about the shooting shortly thereafter.

LEGAL DISCUSSION

THE GUILT PHASE

I.

DID THE LOWER COURT ERR IN ADMITTING WILLIE'S CONFESSIONS INTO EVIDENCE?
The trial court overruled Willie's motion to suppress the statements obtained from Willie by the authorities. Willie contends that the trial court erred in overruling his motion because (1) Willie previously had asserted his fifth amendment right to counsel on a charge of grand larceny, and therefore, under the guidelines of Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), Willie could not be interrogated on any charge in the absence of counsel, and (2) the initial confession was involuntary because it was obtained by promises of benefit or leniency, and therefore it and all subsequent confessions were inadmissible.
The determination of whether a confession is admissable is a finding of fact. Berry v. State, 575 So.2d 1, 4 (Miss. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2042, 114 L.Ed.2d 126 (1991). We will not reverse a trial judge's finding on this issue as long as the judge applied the correct legal standard, did not commit manifest error, and the decision is not contrary to the overwhelming weight of the evidence. Berry, 575 So.2d at 4.

a) Arizona v. Roberson

We take notice that Willie did not raise the Arizona v. Roberson argument in his motion to suppress at the pre-trial suppression hearing or at trial. Generally, we will not review an objection raised for the first time on appeal. Thornhill v. State, *666 561 So.2d 1025, 1029 (Miss. 1990). Despite this general rule, we address this issue as it affects Willie's fundamental rights. See Gray v. State, 549 So.2d 1316, 1321 (Miss. 1989).
Prior to Willie's arrest for robbery and murder, Willie had been charged with grand larceny. Counsel was appointed for Willie on this charge. Willie is mistaken in his assertion that this appointment of counsel was an assertion of his fifth amendment right to counsel. The appointment of counsel was an assertion of his Sixth Amendment right. See McNeil v. Wisconsin, ___ U.S. ___, ___, 111 S.Ct. 2204, 2206, 115 L.Ed.2d 158 (1991).
In McNeil v. Wisconsin, ___ U.S. at ___, 111 S.Ct. at 2207-09, the United States Supreme Court found that the Sixth Amendment right was offense-specific and could not be invoked once for all future prosecutions. McNeil, ___ U.S. at ___, 111 S.Ct. at 2207-09. The Court noted that the purpose of the Sixth Amendment counsel guarantee "is to `protect[ing] the unaided layman at critical confrontations' with his `expert adversary,' the government, after `the adverse positions of government and defendant have solidified' with respect to a particular alleged crime. United States v. Gouveia, 467 U.S. [180], at 189 [104 S.Ct. 2292 at 2298, 81 L.Ed.2d 146]. The purpose of the Miranda-Edwards guarantee, on the other hand ... is to protect ... the suspect's `desire to deal with the police only through counsel.' Edwards v. Arizona, 451 U.S. [477], at 484 [101 S.Ct. 1880, at 1885, 68 L.Ed.2d 378]." McNeil, ___ U.S. at ___, 111 S.Ct. at 2207-09. The Court then found that requesting the assistance of counsel at arraignment is not the equivalent of expressing "a desire for the assistance of an attorney in dealing with custodial interrogation by the police." McNeil, ___ U.S. at ___, 111 S.Ct. at 2209.
We agree. If a defendant has not asserted his Fifth Amendment right to counsel, the fact that he is appointed counsel to protect his Sixth Amendment right does not preclude interrogation on unrelated offenses. As long as the defendant is given his Miranda warnings and makes a knowing and voluntary waiver, then any statements obtained during the interrogation are admissable.
Willie has not shown that he asserted his Fifth Amendment right to counsel while he was in custody on the charge of grand larceny. Therefore, we conclude that his Sixth Amendment appointment of counsel was not an assertion of his Fifth Amendment right, and this assignment is without merit.
Assuming a prior assertion of Willie's Fifth Amendment right to counsel, if Willie had remained in continuous custody on the grand larceny charge, the authorities could not have interrogated Willie about the unrelated murder and robbery in the absence of counsel, unless Willie initiated the communications, exchanges or conversations with the police. Minnick v. Mississippi, ___ U.S. ___, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1991); Arizona v. Roberson, 486 U.S. 675, 680-81, 108 S.Ct. 2093, 2097, 100 L.Ed.2d 704 (1988); see also, Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).
A problem would then arise in Willie's argument because Willie was not in continuous custody. Willie had been released from custody on the grand larceny charge, and he did not request counsel when he was taken into custody for driving an unlicensed vehicle. While in custody for the vehicle violation, Willie was questioned by authorities about the murder and robbery after waiving his Miranda rights.
We have not heretofore considered whether the rule in Edwards v. Arizona, supra, or Arizona v. Roberson, supra, applies when an accused does not remain in continuous custody. A number of foreign jurisdictions have considered this issue, and virtually all have concluded that Edwards and Roberson do not apply when custody has not been continuous. See, e.g., Dunkins v. Thigpen, 854 F.2d 394, 397 (11th Cir.1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989); McFadden v. Garraghty, 820 F.2d 654, 661 (4th Cir.1987); United States v. Fairman, 813 *667 F.2d 117, 125 (7th Cir.1987), cert. denied, 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987); United States v. Skinner, 667 F.2d 1306, 1309 (9th Cir.1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983) (pre-Roberson); Wilson v. State, 573 So.2d 77, 79 (Fla.App. 2 Dist. 1990); State v. Furlough, 797 S.W.2d 631, 640 (Tenn.Cr.App. 1990); State v. Stewart, 113 Wash.2d 462, 780 P.2d 844, 852 (1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1327, 108 L.Ed.2d 502 (1990) (dicta); People v. Trujillo, 773 P.2d 1086, 1091-92 (Colo. 1989); State v. Norris, 244 Kan. 326, 768 P.2d 296, 301-02 (1989); State In Interest of Wells, 532 So.2d 191, 196 (La. App. 1988). The rationale behind these decisions generally is that a non-contrived, non-pretextual break in custody where the defendant has reasonable opportunity to contact his attorney dissolves an Edwards or Roberson claim. See, e.g., People v. Trujillo, 773 P.2d at 1092 [citing Dunkins v. Thigpen, 854 F.2d 394, 397 n. 6 (11th Cir.1988)].
Willie argues that Minnick expanded Edwards and Roberson such that once an accused asserts his right to counsel, the accused may not be interrogated on any matter in the absence of counsel until the case is adjudicated, unless the accused initiates the communications or conversations, regardless of whether the accused is no longer in custody. We disagree.
We recognize that in Minnick the U.S. Supreme Court dismissed the State's argument that Edwards was not violated by interrogation in the absence of counsel after a single consultation with an attorney because the result would have allowed the Edwards protection to "pass in and out of existence multiple times prior to arraignment ...," and "[v]agaries of this sort spread confusion through the justice system and lead to a consequent loss of respect for the underlying constitutional principle." Minnick, 111 S.Ct. at 492. In spite of this language, we do not believe that Minnick dictates that the accused may not be interrogated on an unrelated charge when the accused has not been in continuous custody. The Court's conclusion in Minnick that "[a] single consultation with an attorney does not remove the suspect from persistent attempts by officials to persuade him to waive his right, or from the coercive pressures that accompany custody and that may increase as custody is prolonged" and "the case before us well illustrates the pressures, and abuses, that may be concomitants of custody" makes clear that continuous custody was of significant import in the Court's decision. Minnick, 111 S.Ct. at 491 (Emphasis added).
As Minnick does not require this Court to apply the Edwards or Roberson rule when custody is not continuous, we hereby adopt the rule that a non-contrived, non-pretextual break in custody where the defendant has reasonable opportunity to contact his attorney dissolves an Edwards or Roberson claim. This is not to say that in some cases custody may be of such short duration that the Edwards or Roberson protection does not dissipate, but the case before us is not such a case. When we apply this rule to the instant case, we conclude that the admission of Willie's statements did not violate Arizona v. Roberson.
Willie also contends that the sheriffs violated Arizona v. Roberson and his fifth amendment right against self-incrimination when Willie was questioned about his relationship with his court appointed attorney, Hugh Gibson, who was representing Willie on a charge of grand larceny. The record shows that Willie was not questioned specifically about his conversations with his attorney, rather Willie offered the information as an explanation of why he committed the robbery and murder. We find no evidence of a violation.

b) Implied Promises of Leniency
Willie next argues that the trial judge erred in concluding that his statements were freely and voluntarily given. Willie contends that despite the fact that he waived his Miranda rights before giving each of five statements, his first statement was induced by a promise of leniency or benefit by the sheriffs, and therefore, it and the subsequent confessions, which were a direct and continued result of the inducement, were inadmissible. The alleged *668 inducement occurred during Willie's initial questioning on January 20, when Sheriff Middleton told Willie that "it was always best to tell the truth and the only thing that [Sheriff Bryan] wanted him to do was tell the truth," and Sheriff Bryan told Willie that "if he said anything it would be better for him to tell the truth."
The trial court did not fully consider the totality of the circumstances when it concluded that Willie's confessions were voluntary. The State had the burden to prove all facts prerequisite to admissibility beyond a reasonable doubt. Davis v. State, 551 So.2d 165, 169 (Miss. 1989), cert. denied ___ U.S. ___, 110 S.Ct. 1796, 108 L.Ed.2d 797 (1990) (cites omitted). Once the evidence indisputably showed that the sheriffs told Willie that it would be best or better for him to tell the truth, the trial court should have determined whether these statements were mere exhortations to tell the truth or were inducements or implied promises of leniency. See Layne v. State, 542 So.2d 237, 240 (Miss. 1989). The trial judge did not make this determination. Instead, the judge relied on the sheriffs' testimony that they made no threats or promises to Willie and the irrelevant fact that the sheriffs had been law enforcement officers for a long period of time in making its finding of voluntariness.[1]
The determination of whether a statement by an officer to an accused is a mere exhortation or an inducement to confess generally depends on the specific circumstances surrounding the confession. We previously have found youth, good reputation, and naivety of the criminal justice system to be circumstances which caused a youth to be induced to confess by an officer telling the youth that he would be better off telling the truth. Miller v. State, 243 So.2d 558, 559 (Miss. 1971). Likewise, we have found that an accused who was personally acquainted with the interrogating officer, worked with the officer's wife, and obviously trusted the officer were circumstances which induced the accused to confess when the officer told the accused that he "would do whatever was legal with[in] my realms to help." Dunn v. State, 547 So.2d 42, 46 (Miss. 1989).
Willie contends that Miller, supra, and Dunn, supra, are indistinguishable from his case, and that his youth and obvious trust in Sheriff Middleton caused him to confess. We disagree.
Willie, at the time of his trial, was a twenty-two year old adult who clearly was familiar with the criminal justice system. Willie had prior convictions of grand larceny and simple assault, numerous traffic violations for driving with a suspended license, and pending charges of two counts of burglary and four counts of sale of a controlled substance with intent to distribute. We do not find Miller applicable to Willie's case.
We also find that Dunn is not applicable to Willie's case. Willie was acquainted with Sheriff Middleton and expressed his trust in him, but this relationship and trust emanated from past dealings with the sheriff, not a friendship or personal relationship. We find that neither Willie's youth nor relationship with Sheriff Middleton were circumstances which likely caused Willie to confess when the sheriffs told him "it was always best to tell the truth ..." and "if he said anything it would be better for him to tell the truth."
Moreover, two circumstances weigh heavily against Willie's claim of inducement. First, Willie's first statement after the sheriffs' alleged inducements was not a confession, but a denial. Obviously, Willie was not overly influenced by the alleged promises of leniency or benefit.
Second, Willie testified at his suppression hearing that the sheriffs did not make him any specific promises. In Layne v. State, 542 So.2d 237 (Miss. 1989), we found that an officer telling an accused that "if you're going to talk, tell the truth" was not making an implied promise, especially when no evidence showed that the alleged promise *669 was the reason the accused confessed. Layne, 542 So.2d at 240. As in Layne, Willie has shown no evidence that the sheriffs' statements induced him to confess.
We find that the statements made by the sheriffs to Willie were mere exhortations to tell the truth. In reaching this decision, we caution law enforcement officers in making statements of this nature to defendants. Had Willie not denied being in Maben in his first statement and not testified that the sheriffs did not make any specific promises to him, we may have found that under the totality of the circumstances the confessions were induced.

II.

DID THE ABSENCE OF AN INITIAL APPEARANCE AND A PRELIMINARY HEARING VIOLATE WILLIE'S SIXTH AMENDMENT RIGHT TO COUNSEL AND A FAIR TRIAL?
Willie raises for the first time on appeal an objection to the State's failure to give Willie an initial appearance and a preliminary hearing. Although procedurally barred for failure to raise this objection at the trial level, we address the issue on the merits.

a) Initial Appearance
Willie was arrested on January 20, 1989, indicted on January 25, and arraigned and appointed counsel on January 26. Willie did not receive an initial appearance or a preliminary hearing. Between Willie's arrest on January 20 and his arraignment on January 26, Willie gave five statements  three the first day of custody, a fourth the following day, and a fifth four days later. Willie waived his Miranda rights prior to giving each statement.
Willie was entitled to an initial appearance. See Rule 1.04, Unif.Cr.R.Cir. Ct.Prac. Willie's initial appearance should have been held once "custody, booking, administrative and security needs [were] met... ." Nicholson v. State, 523 So.2d 68, 76 (Miss. 1988) (Robertson, J., Concurring and joined by four justices).[2] A major purpose for the initial appearance is to ensure that accuseds are advised of their right to counsel from a judicial officer "who has no professional duty nor personal inclination to try to exact from the accused a waiver of that right." Nicholson, 523 So.2d at 77 (Robertson, J., Concurring). Since Willie had no initial appearance, his right to counsel attached when his initial appearance ought to have been held. Magee v. State, 542 So.2d 228, 233 (Miss. 1989); Jimpson v. State, 532 So.2d 985, 988 (Miss. 1988) (cites therein); see also, Rule 1.05, Miss.Unif.Crim.R.Cir.Ct.Prac.
Willie's first three statements were obtained during Willie's first day of custody. Willie's right to counsel had not attached during this time. See Herring v. State, 522 So.2d 745, 750-51 (Miss. 1988).
Willie's fourth statement was obtained the following day. Although closer to the time at which Willie should have had an initial appearance, we find that Willie's right to counsel had not attached at that time.
Willie's last statement obtained four days after Willie's arrest clearly was obtained after the time when "custody, booking, administrative and security needs [were] met." See Nicholson, 523 So.2d at 76-7 (Robertson, J., Concurring). Thus, this last statement was obtained after Willie's Sixth Amendment right to counsel had attached. Once Willie's Sixth Amendment right to counsel attached, no officer should have interrogated Willie in the absence of counsel. Cannaday v. State, 455 So.2d 713, 722 (Miss. 1984), cert. denied, 469 U.S. 1221, 105 S.Ct. 1209, 84 L.Ed.2d 351 (1985). Willie, however, could initiate conversations or communications with the officers without the presence of counsel. Saucier v. State, 562 So.2d 1238, 1247 (Miss. 1990) (Hawkins, P.J., specially concurring); see also, Patterson v. Illinois, 487 U.S. 285, 290, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988); Michigan v. Jackson, 475 U.S. 625,
*670 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986).
Sheriff Bryan testified that on January 23, Willie sent word through the jailer that he wanted to talk to Sheriff Bryan. Willie told Sheriff Bryan that "he wanted to talk to a preacher and then wanted to talk to him again." That afternoon, Willie talked to the sheriff. The following day the conversation was reduced to writing, and Willie, prior to signing the statement, waived his Miranda rights. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
We find the last statement obtained from Willie was admissible because it was initiated by Willie, Sheriff Bryan denied that he asked Willie any questions, and Willie waived his Miranda rights prior to signing the statement.
Additionally, we note that Willie had already given three confessions, including one fully detailed one; Willie permitted the officers to search the car he was driving, which resulted in incriminating evidence; Willie made an admission to Sheriff Bryan; Willie showed the officers where he had thrown the gun, which was later retrieved and identified as being the one involved in the murder; and a substantial amount of money was retrieved from Willie's cell after he was incarcerated. The last statement merely added a few additional details to the occurrence of events given in the full confession, showed that Willie previously had purchased liquor from the liquor store, and indicated that Willie had been lying when he previously told officers that Leroy Gibson had been with him and was the one who shot Clardy.[3]
In light of the overwhelming evidence presented against Willie, including three other confessions, we find that the admission of the last confession, if it had been error, was harmless. Cannaday v. State, 455 So.2d 713, 725 (Miss. 1984), cert. denied, 469 U.S. 1221, 105 S.Ct. 1209, 84 L.Ed.2d 351 (1985) (statements to officer obtained in violation of 6th Amendment right to counsel harmless); see also, Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (confession obtained in violation of 5th Amendment right to counsel harmless); Milton v. Wainwright, 407 U.S. 371, 372, 92 S.Ct. 2174, 2175, 33 L.Ed.2d 1 (1972) (assuming statements obtained in violation of 6th Amendment right to counsel, error harmless); State v. William, 248 Kan. 389, 807 P.2d 1292 (1991) (assuming confession was obtained in violation of defendant's Sixth Amendment right to counsel, error harmless). There is no question "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

b) Preliminary Hearing
Willie is correct that his right to a preliminary hearing was violated because he did not receive or waive his right to one. See Avery v. State, 555 So.2d 1039, 1043 n. 5 (Miss. 1990); Lambert v. State, 524 So.2d 576, 581 (Miss. 1988) (Dan Lee, P.J., Dissenting in Part and Concurring in Part). Despite the denial of the hearing, we will not reverse unless Willie was prejudiced by the violation. See Avery, 555 So.2d at 1043; Lambert, 524 So.2d at 578 n. 1.
Willie contends that he was prejudiced because the absence of his preliminary hearing denied him the discovery and confrontation benefits incident to the preliminary hearing. More specifically, Willie contends that he did not have an opportunity to cross-examine all of the law enforcement officers, the pathologist, or the firearms specialist who testified against him at trial, and did not learn that one officer would testify about the recovery of the money from the robbery or that pictures of the money would be introduced into evidence.
We agree that Willie could have used his preliminary hearing for purposes of discovery and confrontation had he received one. Avery v. State, 555 So.2d 1039, 1042 (Miss. 1990); see also, Shook v. State, 552 So.2d 841, 850 (Miss. 1989). We do not agree that Willie showed any prejudice *671 from his absence of a hearing. By waiting until this appeal to raise this issue, we find that there is no evidence in the record to support Willie's allegations of prejudice except for Willie's objection to Officer Bowles' testimony.
The State had not intended to call Officer Bowles to testify until Willie's girlfriend, who owned the vehicle Willie was driving when he was arrested, failed to honor a subpoena to appear in court. Officer Bowles was permitted to testify for the limited purpose of connecting the car to Willie. Willie's counsel had already interviewed Officer Bowles, and Willie refused the court's offer of additional time to interview him. We find that Willie was not prejudiced by Officer Bowles' testimony. Additionally, Willie received other pre-trial hearings which achieved the same purpose of the preliminary hearing, and he was afforded a full and fair trial. See Riely v. State, 562 So.2d 1206, 1211 (Miss. 1990); Avery, 555 So.2d at 1043; Shook, 552 So.2d at 850. We find no evidence of prejudice, and conclude that the violation of Willie's right to a preliminary hearing was harmless.

III.

DID THE TRIAL COURT ERR IN DENYING WILLIE'S MOTION FOR FUNDS TO OBTAIN AN EXPERT AND IN ALLOWING THE STATE TO CROSS-EXAMINE WILLIE AT A PRE-TRIAL MENTAL COMPETENCY HEARING?
Willie contends that he should not be required to choose between the vindication of his right to funds for an expert witness and the privilege against self-incrimination. Willie did request funds to employ his own psychiatrist after the trial court granted him a mental examination at the Mississippi State Hospital at Whitfield, but the trial court did not rule on the motion. Generally, when a trial court has not ruled on a motion, a defendant is procedurally barred on appeal from claiming error. Pinkney v. State, 538 So.2d 329, 343 (Miss. 1988), vacated on other grounds, ___ U.S. ___, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990). Although procedurally barred, we address the issue on the merits and find that Willie had no right to funds for an expert because his examination at the state hospital met the constitutional mandates of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). See Pinkney, 538 So.2d at 343. "[A]n indigent criminal defendant does not have a constitutional right to a psychiatrist of his personal liking or to receive funds to hire his own; rather he has a right only to a competent one." Lanier v. State, 533 So.2d 473, 481 (Miss. 1988) (citing Ake, 470 U.S. at 83, 105 S.Ct. at 1097, 84 L.Ed.2d at 66).
Willie next argues that the State should not have been allowed to cross-examine Willie at the competency hearing about whether he understood at the time he robbed the store and at the hearing that it was wrong to kill someone. Willie objected to being cross-examined about whether he remembered what occurred inside the liquor store, but did not object to the State's questions about understanding right from wrong.
Generally, a defendant is procedurally barred from raising an objection on appeal that is different than that raised at trial. See Thornhill, 561 So.2d at 1029. Despite the bar, we address this issue.
We question the validity of the State's cross-examination of Willie during this competency hearing. When Willie indicated to the trial court that he believed his sanity at the time of the offense was to be a significant factor at trial, the court had a duty to assure Willie access to a competent psychiatrist. Lanier v. State, 533 So.2d 473, 480 (Miss. 1988) (citing Ake, supra). The State, not being qualified to assess a defendant's sanity, should not have been allowed to question whether Willie knew right or wrong at the time of the killing or at the competency hearing.
Although we find that the State's questions were improper, the State did not use this testimony at trial, Willie did not rely on a psychological defense, and Willie's sanity was not a "significant factor" at trial. Therefore, we conclude that the error *672 was harmless. Cf. Satterwhite v. Texas, 486 U.S. 249, 257, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1984).

IV.

DID THE STATE IMPERMISSIBLY USE ITS PEREMPTORY STRIKES TO EXCLUDE BLACKS AND FEMALES FROM THE JURY VENIRE?
The jury which convicted Willie was composed of ten white jurors and two black jurors, with two black alternate jurors. During jury selection, the State exercised six peremptory challenges to strike six of eight prospective black jurors and six peremptory challenges to strike six of twenty-eight prospective white jurors. Willie alleges that the racial composition of the jury violated his Sixth and Fourteenth Amendment rights pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
After Willie alleged that the jury composition violated his rights, the State proffered its reasons for striking each of the prospective jurors, both black and white. Once the State concluded its explanations for striking the prospective jurors, Willie did not rebut and the trial judge overruled his Batson motion. In his motion for a new trial, Willie proffered evidence to show that the State's reasons for striking the black jurors were not racially neutral. The trial court found that the State had not engaged in a discriminatory policy.
We give "great deference" to the trial court's findings of fact on this issue. Bradley v. State, 562 So.2d 1276, 1283 (Miss. 1990) (citing Wheeler v. State, 536 So.2d 1347, 1351 (Miss. 1988)). As long as the trial court was within its authority when it determined that the State articulated a "neutral, non-race based explanation," we will not reverse. Chisolm v. State, 529 So.2d 635, 639 (Miss. 1988). Even taking into account Willie's untimely rebuttal testimony, which was proffered in his motion for a new trial, see Sudduth v. State, 562 So.2d 67, 71 (Miss. 1990) (cites therein); Davis v. State, 551 So.2d 165, 172 (Miss. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1796, 108 L.Ed.2d 797 (1990), we find that the trial judge did not exceed his authority in finding that the State's explanations for striking prospective black jurors were race neutral. This assignment of error has no merit.
Willie also alleges that the State engaged in sex discrimination in choosing the jury venire. Assuming, without deciding, that Batson is applicable to sex discrimination, we find Willie's claim meritless as the State articulated sex-neutral reasons for striking the prospective jurors.

V.

WAS WILLIE DENIED A TRIAL BY AN IMPARTIAL JURY WHEN THE TRIAL COURT RECUSED FOR CAUSE MEMBERS OF THE JURY VENIRE WHO EXPRESSED NO INABILITY TO FOLLOW THE LAW OR INSTRUCTIONS OF THE TRIAL COURT?
The trial judge excused nine prospective jurors for cause concluding that the nine had indicated that they would not vote guilty as long as a conviction could lead to the infliction of the death penalty. Willie argues that the judge's conclusion was erroneous because the court did not properly question the prospective jurors.
Recognizing that the development of an exact set of questions and answers that would disqualify a juror would be unduly burdensome, we generally give deference to the trial court's findings of juror bias. Williamson v. State, 512 So.2d 868, 881 (Miss. 1987). This rule is not absolute. A prospective juror may not be struck from the jury venire for cause simply because the juror voiced general objections to the death penalty or expressed conscientious or religious scruples against the infliction of the death penalty. Jordan v. State, 464 So.2d 475, 481 (Miss. 1985) [citing Witherspoon v. Illinois, 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776, 784-85 (1968), vacated on other grounds, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986)]. If a juror indicates that if he was convinced of the guilt of the defendant and *673 the circumstances warranted a verdict of guilty, he could return a verdict of guilty although that verdict could result in the death penalty, then the juror may not be struck from the jury venire for cause, despite his objections and concerns. Gray v. State, 472 So.2d 409, 421 (Miss. 1985) [citing Armstrong v. State, 214 So.2d 589, 593 (Miss. 1968), reversed in part on other grounds, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987)]; Wilcher v. State, 455 So.2d 727, 733 (Miss. 1984), cert. denied, 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 794 (1985) (citing Armstrong, supra).
A prospective juror may be struck if the juror indicates that he cannot consider and decide the facts impartially or cannot conscientiously apply the law or the court's instructions. Williamson v. State, 512 So.2d at 881 (citing Armstrong, supra); Stringer v. State, 500 So.2d 928, 943 (Miss. 1986) [citing Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851-52 (1985)]. The juror need not expressly state that he absolutely refuses to consider the death penalty; an equivalent response made in any reasonable manner which indicates that the juror's position is firm will suffice. Williamson v. State, 512 So.2d at 881; Stringer v. State, 500 So.2d at 943 [citing Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851-52 (1985)].
The trial judge initially instructed the prospective jurors who indicated that they had reservations about imposing the death penalty that they would not be excused from being jurors if they could follow the law and evidence. The judge then inquired into each juror's reservations to imposing the death penalty. Each prospective juror indicated that he would not impose the death penalty, even if the evidence justified it and the law authorized it. Even the one juror who at first equivocated, ultimately concluded that he could not vote for the death penalty. Cf. Gray v. Mississippi, 481 U.S. 648, 657-59, 107 S.Ct. 2045, 2050-51, 95 L.Ed.2d 622 (1987).
We find that the trial judge sufficiently questioned the prospective jurors to be able to determine whether the jurors could follow the law and the court's instructions. Based on the prospective jurors' responses, the trial court did not abuse its discretion in excluding the prospective jurors for cause.

VI.

DID THE TRIAL COURT ERR WHEN IT REFUSED TO GRANT WILLIE A LESSER INCLUDED OFFENSE OF MANSLAUGHTER?
Willie was charged with capital murder. The trial court granted a lesser included offense instruction for murder, but refused to grant a lesser included instruction for manslaughter. Willie argues that the trial court erred in refusing the manslaughter instruction because there was substantial evidence in the record to support a "no malice" instruction or a "heat of passion" instruction.
The instruction proposed by Willie would have told the jury that it could find Willie guilty of manslaughter if it found beyond a reasonable doubt that Willie killed Joe Clardy while engaged in the commission of an armed robbery. The manslaughter statute explicitly excepts rape, burglary, arson, and robbery from its provisions. See Miss. Code Ann. § 97-3-27 (1972). The trial court cannot be put in error for refusing to give an instruction that misstates the law. Allman v. State, 571 So.2d 244, 250 (Miss. 1990). Therefore, this assignment of error has no merit.

VII.

DID WILLIE'S INDICTMENT FAIL TO INFORM WILLIE THAT THE STATE WAS PROCEEDING UNDER A THEORY OF ARMED ROBBERY?
Willie's indictment reads in pertinent part:
Michael Warren Willie ... did ... kill and murder Joe Clardy ... while engaged in the commission of the crime of Robbery, in violation of Section 97-3-19(2)(e) MCA (1972), as amended... . (Emphasis added).
*674 Willie argues that his conviction must be reversed because the indictment did not charge him with committing an attempted robbery, and (1) the jury returned a general verdict of guilty without specifying whether it found that Willie killed Joe Clardy while Willie robbed or attempted to rob Joe Clardy, and (2) the jury was instructed over Willie's objection that it could find Willie guilty of capital murder if it found that Willie killed Joe Clardy while engaged in the commission of attempted robbery.
We previously considered Willie's argument in Culberson v. State, 379 So.2d 499 (Miss. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 406, 66 L.Ed.2d 250 (1980). In Culberson, we found that reference to subsection 2(e) of Miss. Code Ann. § 97-3-19 and the statutory language, "engaged in the commission of," was sufficient to put a defendant on notice that he could be charged with the commission or the attempt to commit the constituent felony of robbery. Culberson, 379 So.2d at 503-04. Finding nothing new in Willie's argument, we reaffirm our decision in Culberson.
Willie next contends that the indictment is defective because it does not allege an overt act for the robbery. We also considered this issue in Culberson, and more recently in Mackbee v. State, 575 So.2d 16 (Miss. 1990). In both cases we found contrary to Willie's position. Mackbee v. State, 575 So.2d at 34-35; Culberson, 379 So.2d at 504. This assignment of error has no merit.

VIII.

DID THE TRIAL COURT ERR IN ALLOWING PHOTOGRAPHS OF THE VICTIM INTO EVIDENCE DURING THE GUILT PHASE OF TRIAL?
Four photographs of Joe Clardy's body taken at the scene of the crime were admitted into evidence. The first photograph depicted the body as it was found. It was admitted without objection. The next three, offered as one exhibit, illustrated the three gunshot wounds. Willie objected stating that only one of the three should be allowed because that one plus the one already in evidence "would be sufficient, and the introduction of more than one more would serve only to inflame the passion and emotions of the jury." Willie's objection was overruled. On appeal, Willie has raised an additional objection  that the photographs were not probative at the guilt phase because neither the cause of death, nor the fact that Joe Clardy was shot three times was disputed.
Willie made no objection at trial to the admission of two of the four photographs, and therefore has waived his objection on appeal as to those two. Lanier v. State, 533 So.2d 473, 484 (Miss. 1988). Willie, also, did not object at trial to the admission of the photographs on the basis that they had no probative value, so he is procedurally barred from raising this additional basis on appeal. Stevens v. State, 458 So.2d 726, 730 (Miss. 1984). Our review is limited to whether the two photographs were used in such a way that they inflamed the passions of the jury.
Generally, the admissibility of photographs rests within the sound discretion of the trial judge. Mackbee v. State, 575 So.2d 16, 31 (Miss. 1990). "[P]hotographs of bodies may be admitted into evidence where they have probative value, and where they are not so gruesome as to be overly prejudicial and inflammatory." Stringer v. State, 500 So.2d 928, 934 (Miss. 1986) (cites omitted); Simpson v. State, 497 So.2d 424, 432 (Miss. 1986).
In this case the photographs were not gruesome. They depicted the body as it was found and the gunshot wounds, but they were not particularly bloody or graphic. At most they were cumulative or repetitive.
Despite not being particularly gory or gross, the trial judge should not have allowed the photographs into evidence if they were cumulative or repetitive. Rule 403, M.R.E.; see also, Simpson, 497 So.2d at 432. Assuming such an error, we find the error harmless and one not requiring reversal because the photographs were not particularly gory and did not have a highly inflammatory effect on the jury. Stringer, 500 So.2d at 934; Simpson, 497 So.2d at *675 432; see also, Cabello v. State, 471 So.2d 332, 341 (Miss. 1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986) (reversal for gruesome and/or cumulative photographs is rare); Sharp v. State, 446 So.2d 1008, 1009 (Miss. 1984), vacated on other grounds, 930 F.2d 450 (5th Cir.1991) ("[w]here the evidence weighs so heavily against the appellant and where the record shows no substantial prejudice [] by admission of the photographs, such admission by the trial court [is] not reversible error").

IX.

DID THE TRIAL JUDGE ERR IN ALLOWING A WITNESS FOR THE STATE TO TESTIFY WHEN THE STATE FAILED TO GIVE PROPER NOTICE OF A WITNESS PURSUANT TO RULE 4.06, UNIF.CRIM. R.CIR.CT.PRAC.?
When the State called Officer Bowles as a witness, Willie objected because the State failed to give proper notice of the witness to Willie. Willie contends that the absence of notice of this witness was prejudicial to his defense and that the trial court erred by refusing to exclude the testimony or, in the alternative, to grant a mistrial.
As discussed in issue two, supra, the State had not intended to call Officer Bowles to testify until Willie's girlfriend, who owned the vehicle Willie was driving when he was arrested, failed to honor a subpoena to appear in court. Officer Bowles was permitted to testify for the limited purpose of connecting the car to Willie. Willie's counsel had interviewed Officer Bowles prior to Officer Bowles testifying, and Willie refused the court's offer of additional time to interview him.
We find that Willie did not receive proper notice of the witness. See Rule 4.06(a), Unif.Crim.R.Cir.Ct.Prac.. The trial court, however, properly provided Willie the opportunity to interview the newly discovered witness. Rule 4.06(i)(2), Miss.Unif.Crim. R.Cir.Ct.Prac. (1990); Cockrell v. State, 566 So.2d 1243, 1245 (Miss. 1990); West v. State, 553 So.2d 8, 18-19 (Miss. 1989) [citing Box v. State, 437 So.2d 19, 23-24 (Miss. 1983) (Robertson, J., concurring) and progeny]. Willie refused the trial court's offer to interview the witness and did not move for a continuance or a mistrial. Finding no prejudice, this error does not merit reversal.

X.

GUILT PHASE SUMMARY
In sum, we find that no errors which occurred during the guilt phase of Willie's trial require reversal. Willie's conviction is affirmed.
CONVICTION OF CAPITAL MURDER AFFIRMED.

SENTENCING PHASE

XI.

DID THE TRIAL JUDGE DENY WILLIE A FAIR TRIAL BY LIMITING THE TIME, THE CONTENT, AND THE NUMBER OF WITNESSES FOR CLOSING ARGUMENT?

a) Limitation of Time
Willie contends that the trial judge's time limitation of Willie's closing argument denied him a fair trial. The trial judge asked the parties whether ten minutes would be sufficient time to close for the sentencing phase. Willie responded that he would like at least twenty-five minutes. The judge granted fifteen minutes "to the side." The trial judge later denied that he had limited closing argument to fifteen minutes and stated that he did not believe Willie was serious in his request for additional time. Willie responded by offering to read to the court portions of his closing argument which he never had time to say.
We do not agree that Willie did not "seriously" request additional time. The record is clear  Willie requested twenty-five minutes and was granted fifteen.
Generally, the amount of time granted for closing argument rests within the sound discretion of the trial judge. Gray v. State, 351 So.2d 1342, 1346 (Miss. 1977), cert. denied, 446 U.S. 988, 100 S.Ct. *676 2975, 64 L.Ed.2d 847 (1980); Hollins v. State, 340 So.2d 438, 441 (Miss. 1976) [citing Lee v. State, 51 Miss. 566 (1875)]. This discretion is not absolute, and we have instructed the lower courts to proceed with caution when limiting the time for closing argument in a criminal trial:
[T]o limit the argument of counsel for the defense in a criminal prosecution is a matter of great delicacy, and should be done with the utmost prudence and caution... . When the time for the argument of counsel to the jury is restricted by the court, it should be very clear that the right of the accused to be heard has not been essentially impaired, and that an opportunity for making full and complete defense on the whole case has not been denied. What time would be necessary or reasonable for this purpose would depend, to a great extent, upon the character and circumstances of the particular case.
Ray v. State, 330 So.2d 580, 586 (Miss. 1976) [quoting Wingo v. State, 62 Miss. 311, 315 (1884)]; see also, Gray, 351 So.2d at 1346.
We have found that restricting closing argument in the sentencing stage to twelve minutes in a capital murder case was "clearly an abuse of discretion." Gray, 351 So.2d at 1346. We also have found that a limitation of closing argument to thirty minutes to a side in a case involving discharge of a firearm into a dwelling was an abuse of discretion. Ray, 330 So.2d at 586. In light of these cases, we have difficulty accepting the State's position that the judge's limitation to fifteen minutes for closing argument is not an abuse of discretion.
Life is at stake during this stage of the proceeding. Do we, the judiciary, so little value a defendant's life that we cannot grant more than fifteen minutes to allow a defendant to make a full and complete plea or argument to a jury to spare him from execution? We think not. A defendant must be allowed, within reason, whatever time he believes is necessary to seek a penalty less than death. Willie's request for twenty-five minutes was within reason.
Despite the limitation, if Willie had sufficient time to give his closing argument, we will not reverse. Cf. Hollins, 340 So.2d at 441. By offering to read to the trial court portions of his closing argument which he never had time to say, Willie clearly demonstrated that he was prejudiced by not being allowed to make a full and complete closing argument. The trial judge abused his discretion, and because we cannot conclude that Willie's right to be heard was not impaired, we reverse and remand for a new trial on sentencing.

b) Limitation on Content
Willie next argues that his right to a fair trial was denied when the trial judge limited the content of his closing argument during the sentencing phase. The judge sustained the State's objection to the defense reading a few paragraphs from an article in the Jackson Daily News, which Willie alleges was a philosophical statement against the death penalty.
We do not reach the issue of whether the trial judge abused his discretion by refusing to allow the article to be read to the jury because Willie failed to produce the article for this Court to review. For this reason, we must defer to the trial judge's finding of fact on this issue.
Were we to address the merits, we would find that the trial judge did not abuse his discretion. We previously have found improper, remarks attacking the propriety of the death penalty because the propriety was not at issue and the remarks were designed to excite the passions or prejudices of the jury. Johnson v. State, 416 So.2d 383, 392 (Miss. 1982); cf. Wilcher v. State, 448 So.2d 927, 942 (Miss. 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984). Moreover, unless the content limitation denied Willie a fundamentally fair trial, we would not reverse. Pinkney v. State, 538 So.2d 329, 358 (Miss. 1988), vacated on other grounds, ___ U.S. ___, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990). The judge's refusal of this article did not deny Willie a fair trial.

c) Limitation of Number of Witnesses
Willie next argues that the trial judge erred by limiting the number of witnesses *677 who could testify to mitigating circumstances at the sentencing phase. During the presentation of witnesses, the judge voiced his opinion that the testimony from Willie's witnesses was repetitious and suggested that he would not allow all the family members to testify to the same circumstances. Willie offered to limit his witnesses to two more. After the two testified, the trial judge asked the defense to call their next witness. Willie responded that "[t]he court has ruled on the number of witnesses, and we only have one other; it would be the defendant... ." Willie did not testify, but gave part of the closing argument.
A defendant must be allowed during the sentencing stage to show the jury that he should not be executed. In order to do so, the judge may not preclude the jury "from considering, in mitigation, any aspect of the defendant's character or record or any circumstance of the offense." Cole v. State, 525 So.2d 365, 371 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988) (cites omitted). The only requirement to introducing evidence at the sentencing phase is that it must be relevant. Cole, 525 So.2d at 371 (cite omitted).
In the instant case, the trial judge improperly suggested that he might limit the number of witnesses because he could not have known to what each witness would testify. However, Willie, himself, did the actual limiting. Finding no limitation by the judge as to the number of witnesses, or a contemporaneous objection by Willie to the judge's suggestion, we find that this assignment of error has no merit.

XII.

WAS WILLIE DENIED A FAIR TRIAL WHEN THE TRIAL COURT ISSUED AN ANTI-SYMPATHY INSTRUCTION AND THE PROSECUTOR INFORMED THE JURY THAT IT HAD A DUTY TO RETURN THE DEATH SENTENCE?
Willie contends that (1) the trial judge's instructions when read as a whole made it clear to jurors that sympathy had no place in their deliberations, (2) the State improperly told the jury that it was not to consider sympathy in determining whether Willie should live or die, and (3) the State improperly told the jury if it found that aggravating circumstances outweighed mitigating circumstances, it had a duty to return a death sentence. We find each of Willie's arguments, except one, procedurally barred because Willie failed to timely object at trial. See Cole v. State, 525 So.2d at 369; Shelton v. State, 445 So.2d 844, 846 (Miss. 1984).
Willie did object to instruction S-9 which reads in pertinent part:
[Y]ou should consider and weigh any aggravating and mitigating circumstances, ..., but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.
.....
In the event that you find that the mitigating circumstance(s) do not outweigh or overcome the aggravating circumstance(s), you may impose the death sentence.
Willie argues that this instruction impermissibly told the jury that it could not consider sentiment and sympathy in the sentencing phase.
The United States Supreme Court has found that the anti-sympathy language used in the preceding instruction passes constitutional muster. California v. Brown, 479 U.S. 538, 542-43, 107 S.Ct. 837, 839-40, 93 L.Ed.2d 934 (1987). We find that because the instruction does not inform the jury that it must disregard in toto sympathy and leaves the jury the option to vote for or against the death penalty, the instruction is a proper statement of the law. See Pinkney v. State, 538 So.2d 329, 351 (Miss. 1988), vacated on other grounds, ___ U.S. ___, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); Williams v. State, 544 So.2d 782, 788 (Miss. 1987). This argument has no merit.

*678 XIII.

WAS WILLIE DENIED HIS RIGHT TO COUNSEL AND A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED A STATE PSYCHOLOGIST TO TESTIFY TO THE RESULTS OF A PSYCHIATRIC EVALUATION DURING THE SENTENCING PHASE?
A state psychologist was allowed to testify over Willie's objection at the sentencing phase that in her opinion Willie was not psychotic or mentally ill. Willie contends that the introduction of this testimony violated his right to counsel in violation of the Sixth Amendment and that use of the evaluation by the State to rebut mitigating evidence was improper.
If Willie had been compelled to consent to the psychiatric evaluation, his claim that he was denied his right to counsel during the examination would have merit. See Estelle v. Smith, 451 U.S. 454, 468-71, 101 S.Ct. 1866, 1876-77, 68 L.Ed.2d 359 (1981). Estelle is not controlling in this case because Willie was not compelled; rather under the advice of counsel, Willie sought the examination.
In Buchanan v. Kentucky, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), the U.S. Supreme Court found no Sixth Amendment violation where petitioner's counsel had himself requested the psychiatric examination, had presumably consulted with the petitioner about the nature of the examination, and had pursued a "mental status" defense. Buchanan, 483 U.S. at 424-25, 107 S.Ct. at 2918-19. Buchanan is analogous to the instant case. Willie's counsel requested the psychiatric examination, Willie testified that he would like to have a psychiatric evaluation to determine whether he knew right from wrong, and presumably Willie had consulted with his attorney about the nature of the psychiatric examination. We find no violation of Willie's right to counsel.
Willie next argues that the state psychiatrist's testimony was improper because the psychiatrist's testimony was allowed although Willie put on no evidence showing that he was mentally ill as a mitigating defense. We agree that the psychiatrist should not have been allowed to testify if Willie did not raise his sanity as a mitigating factor. Willie did not claim to be insane, but he did proffer evidence showing that he had family members who had some mental instability and that he had socialization problems. Because Willie made such inferences, we defer to the trial judge's discretion in allowing the psychiatrist to give her opinion that Willie was not psychotic. Furthermore, the testimony was harmless because Willie was not asserting insanity as a mitigating factor. Cf. Satterwhite v. Texas, 486 U.S. 249, 257, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1984).

XIV.

DID THE STATE IMPERMISSIBLY PRESENT EVIDENCE OF OTHER CRIMES OR BAD ACTS DURING THE SENTENCING PHASE?
Willie contends that the State improperly referred to other crime evidence first by falsely accusing Willie of stealing the gun used in the crime and emphasizing this evidence during closing argument, and second by eliciting repeated references to other crime evidence during the questioning of Sheriff Bryan.
We summarily dismiss Willie's allegation of being falsely accused. Willie at one time stated that he obtained the gun from a gambling house, but later admitted that he stole the gun.
Willie's argument that the State should not have referred to this evidence during closing argument as it was evidence of "other crimes" has merit, but Willie is procedurally barred from raising this claim because he did not object on this ground at trial. See Thornill v. State, 561 So.2d 1025, 1029 (Miss. 1990); see also, Rule 103(a)(1) M.R.E.
Willie next alleges that the questioning of Sheriff Bryan elicited four improper and prejudicial references to evidence of other crimes. The first reference occurred when Sheriff Bryan testified that Willie had been *679 arrested for driving an unlicensed vehicle. The trial judge overruled Willie's objection finding that the testimony was used to show that there was no license on the car driven by Willie.
Sheriff Bryan later made three general references indicating that Willie had committed other crimes, two during direct examination and one during cross-examination. Willie did not object to these statements.
Generally, evidence of "other crimes" is inadmissible. Mackbee v. State, 575 So.2d 16, 27 (Miss. 1990). This rule is not absolute, and such evidence is admissible when it is used to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 404(b), M.R.E.; Mackbee, 575 So.2d at 27.
We find that Sheriff Bryan's testimony regarding Willie's arrest was admissible to show identity and link Willie to the unlicensed car seen in the vicinity of Joe's Package Store at the time of the murder. The admission of this testimony into evidence over Willie's objection was not error. Sheriff Bryan's other statements were improper, but Willie's failure to object at trial procedurally bars him from asserting this claim on appeal. Lambert v. State, 574 So.2d 573, 575 (Miss. 1990); see also, Rule 103(a)(1), M.R.E.

XV.

DID THE TRIAL JUDGE ERR IN ALLOWING A WITNESS TO TESTIFY TO THE CHARACTER OF THE VICTIM?
During cross-examination of a defense witness offering mitigation testimony during the sentencing phase, the following exchange occurred:
Q. What do you think Michael Warren Willie can contribute to society?
A. Well I think  Michael's life just began. I think he can contribute a whole lot, such as  what he did  I mean he  it was wrong, but he's a person. I think he can contribute just as much as I can to society?
Q. You know Joe Clardy was a person too, wasn't he?
A. Yes, he was. I do know that.
Willie did not object to the State's questions.
Willie argues that the State blatantly prompted the jury to weigh the value of Willie's life against the value of Joe Clardy's life. Because Willie made no objection to the State's questions at trial, we find Willie is procedurally barred from raising this error on appeal. Turner v. State, 573 So.2d 657, 672 (Miss. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991); Shell v. State, 554 So.2d 887, 901 (Miss. 1989), reversed on other grounds, ___ U.S. ___, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990).
Were we to address the objection, we would find that the comment by the prosecutor was improper. While the comment is not a victim impact statement, see Turner v. State, 573 So.2d 657, 671-72 (Miss. 1990); Shell v. State, 554 So.2d 887, 901 (Miss. 1989), reversed on other grounds, ___ U.S. ___, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), the comment had no bearing on Willie's moral culpability.[4] We caution the State to avoid interjecting comments of this nature during the sentencing phase.

XVI.

DID THE SENTENCING INSTRUCTIONS ALLOW THE JURY TO PERMISSIBLY CONSIDER FACTORS WHICH WERE NOT AGGRAVATING CIRCUMSTANCES?
Willie contends that two instructions given to the jury "allowed the prosecution to argue considerations which had nothing to *680 do with aggravating circumstances or mitigating circumstances" and allowed the jury to permissively consider mitigating circumstances. Willie failed to object at trial to instruction S-4, which allegedly allowed permissive consideration of mitigating circumstances, or to the State's alleged improper argument. Therefore, Willie's objection has not been properly preserved for review by this Court and Willie has waived this assignment of error. See Moawad v. State, 531 So.2d 632, 635 (Miss. 1988); Cole, 525 So.2d at 369.
Were there no procedural bar, we still would find Willie's position without merit. Assuming the State argued considerations which had nothing to do with aggravating circumstances or mitigating circumstances, the error, unless quite egregious, would be harmless if the jury were properly instructed. See Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 1193, 108 L.Ed.2d 316 (1990) (instructions from the court generally carry more weight than arguments by the prosecutor). In reviewing the instructions, we look to the instructions as a whole. Roundtree v. State, 568 So.2d 1173, 1177 (Miss. 1990); Shell v. State, 554 So.2d at 900, reversed on other grounds, ___ U.S. ___, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990).
Instruction S-4 allowed the jury to consider factors other than aggravating circumstances, but Section B of instruction S-9 limited the jury's consideration of aggravating circumstances to four factors, which are part of those allowed by statute. See Miss. Code Ann. § 99-19-101(5) (1972). Due to the limiting instruction, the jury was properly instructed on the law.
Instruction S-4 also allowed permissive consideration of mitigating circumstances. Section B of instruction S-9, however, eliminated the permissiveness by requiring that if "one or more of the above aggravating circumstances is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstance(s)... ." We find that the jury instructions as a whole were proper. See Shell v. State, 554 So.2d at 903, reversed on other grounds, ___ U.S. ___, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990).

XVII.

SHOULD THE PECUNIARY GAIN AND ROBBERY AGGRAVATING CIRCUMSTANCES HAVE BEEN ALLOWED TO BE CONSIDERED AS SEPARATE AND DISTINCT AGGRAVATORS?
The trial judge instructed the jury that it could consider four aggravating circumstances. The jury unanimously found two  that the capital murder was committed while Willie was engaged in the commission of the crime of robbery and the capital murder was committed for pecuniary gain. Willie asks that we revisit our prior decisions whereby we have held that these two aggravators may be given as separate and distinct aggravating circumstances.
Our recent decision in Ladner v. State, 584 So.2d 743 (Miss. 1991), significantly affects this issue. Prior to Ladner, we allowed a jury to consider both aggravators in its deliberations on the grounds that "[t]he evidence supports both as it reveals the robbery was committed for pecuniary gain during the course of which the homicide occurred," and proof of one aggravator was sufficient for the jury to impose a sentence of death. Tokman v. State, 435 So.2d 664, 669 (Miss. 1983), cert. denied, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984). However, we recommended that trial judges use caution and close scrutiny. Jones v. State, 517 So.2d 1295, 1300 (Miss. 1987), reversed on other grounds, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988).
In Ladner, we observed that in a particular case the evidence may be such that the aggravating circumstances of robbery and pecuniary gain are both clearly supported by the evidence. In the absence of such a case, we held that the pecuniary gain aggravator should not be given. Ladner, 584 So.2d 743.
Today, we go one step further. Not only should the two aggravators not be given as *681 separate and independent aggravators when they essentially comprise one, they may not be given. When life is at stake, a jury cannot be allowed the opportunity to doubly weigh the commission of the underlying felony and the motive behind underlying felony as separate aggravators. Accord, People v. Bigelow, 37 Cal.3d 731, 209 Cal. Rptr. 328, 340, 691 P.2d 994, 1006 (1984), modified by 44 Cal3d 375, 243 Cal. Rptr. 842, 749 P.2d 279 (1988), cert. denied, 488 U.S. 871, 109 S.Ct. 188, 102 L.Ed.2d 157 (1988); Cook v. State, 369 So.2d 1251, 1256 (Ala. 1978); State v. Rust, 197 Neb. 528, 250 N.W.2d 867, 874 (1977), cert. denied, 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977); Provence v. State, 337 So.2d 783, 786 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). To the extent that Wiley v. State, 484 So.2d 339 (Miss. 1986), cert. denied, 479 U.S. 906, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986), our seminal case on this issue, and its progeny dictate otherwise, these cases are hereby overruled. See Wiley, 484 So.2d at 351 and progeny, including Minnick v. State, 551 So.2d 77, 96-97 (Miss. 1988), reversed on other grounds, ___ U.S. ___, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); Jones v. State, 517 So.2d 1295, 1300 (Miss. 1987), reversed on other grounds, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988); see also, cases preceding Wiley, including Gray v. State, 472 So.2d 409, 419 (Miss. 1985), reversed on other grounds, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987); Jordan v. State, 464 So.2d 475, 478 (Miss. 1985), vacated on other grounds, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986); Booker v. State, 449 So.2d 209, 221 (Miss. 1984), vacated on other grounds, 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985); Irving v. State, 441 So.2d 846, 849 (Miss. 1983); Tokman v. State, 435 So.2d 664, 668 (Miss. 1983), cert. denied, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984); Gilliard v. State, 428 So.2d 576, 586 (Miss. 1983), cert. denied, 464 U.S. 867, 104 S.Ct. 40, 78 L.Ed.2d 179 (1983); and Smith v. State, 419 So.2d 563, 568 (Miss. 1982), cert. denied, 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983). This decision is to be prospective and will take effect from this date forward.

XVIII.

DID THE JURY INSTRUCTIONS IMPERMISSIBLY REQUIRE THE JURY TO UNANIMOUSLY FIND MITIGATING CIRCUMSTANCES?
Willie objected to instruction S-9 at trial, but on appeal Willie has raised an objection different than that raised at trial. Although procedurally barred, we address Willie's argument that jury instruction S-9 required the jury, when it determined whether aggravating circumstances outweighed mitigating ones, to consider only those mitigating circumstances which it unanimously found.
This Court follows the rule that jury instructions must not inform the jury that it may consider only those mitigating circumstances which it unanimously finds. McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990); Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); Turner v. State, 573 So.2d 657, 668 (Miss. 1990); Shell v. State, 554 So.2d at 905, reversed on other grounds, ___ U.S. ___, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). In determining whether the jury was so instructed, we do not look solely at instruction S-9, but at the instructions as a whole. Roundtree v. State, 568 So.2d at 1177; Shell v. State, 554 So.2d at 900, reversed on other grounds, ___ U.S. ___, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990).
Instruction S-8 told the jury in pertinent part that:
[T]he procedure that you must follow is not a mere counting process of a certain number of aggravating circumstances versus the number of mitigating circumstances. Rather, you must apply your reasoned judgment as to whether the situation calls for life imprisonment or whether it requires the imposition of death, in light of the totality of the circumstances present.
Instruction S-9 further told the jury:
In reaching your decision, you may objectively consider the detailed circumstances *682 of the offense for which the defendant was convicted, and the character and record of the defendant himself... .
A.
To return the death penalty ... you must first unanimously find from the evidence ... that one or more of the following [aggravating] facts existed:
.....
Next, to return the death penalty, you must find that the mitigating circumstances ... do not outweigh the aggravating circumstances... .
We find that the jury was instructed to unanimously find aggravating circumstances, but not mitigating circumstances. The instructions were proper and the trial judge did not err in granting the instructions. This assignment of error has no merit.

XIX.

SUMMARY OF THE SENTENCING PHASE
Finding that the trial court impermissibly limited the time for Willie's closing argument, we reverse and remand for a new trial on sentencing only.

PROPORTIONALITY REVIEW
Because we reverse on the sentencing phase, we do not address Willie's allegation that the death penalty in this case is disproportionate to the penalty imposed in similar cases. On remand, we instruct the trial court to revise its heinous, atrocious and cruel instruction, S-7-A, as it has been deemed unconstitutional. See Shell v. State, ___ U.S. ___, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990).
CONVICTION OF CAPITAL MURDER AFFIRMED. SENTENCE OF DEATH REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] The trial judge stated, "We're dealing with, I would think, two of the top sheriffs in the State of Mississippi that have been doing this a long time, both of them stated there were no threats or any promises, therefore, the motion to suppress the confessions is hereby denied."
[2] Because four justices agreed with Justice Robertson's concurrence, this constitutes the majority view.
[3] This was not raised as a defense or an issue at trial.
[4] We also take note of the U.S. Supreme Court's recent decision overruling South Carolina v. Gathers, 490 U.S. 805, 811, 109 S.Ct. 2207, 2210-11, 104 L.Ed.2d 876 (1989) and Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), in which the Court found that victim impact evidence and prosecutorial argument on that subject may be relevant to moral culpability and blameworthiness and are not per se barred by the Eighth Amendment. Payne v. Tennessee, ___ U.S. ___, ___, 111 S.Ct. 2597, 2621-25, 115 L.Ed.2d 720 (1991).